

08 CV 02359

James H. Hohenstein
Lissa D. Schaupp
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
(212) 513-3200
Telefax: (212) 385-9010
E-mail: jim.hohenstein@hklaw.com
        lissa.schaupp@hklaw.com

Attorneys for Plaintiff,
James N. Hood as Liquidating Trustee of the
Oceantrade Corporation Liquidating Trust

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES N. HOOD AS LIQUIDATING TRUSTEE
OF THE OCEANTRADE CORPORATION
LIQUIDATING TRUST,

                    Plaintiff,

        -against-

ASIABULK INC. a/k/a ASIA BULK INC. and
IMC SHIPPING CO. PTE. LTD.,

                    Defendants.

08 Civ.      (    )

**VERIFIED COMPLAINT**

        Plaintiff, James N. Hood as Liquidating Trustee of the Oceantrade Corporation Liquidating Trust ("Plaintiff"), by and through its attorneys, Holland & Knight LLP, for its verified complaint against defendants, Asiabulk Inc. a/k/a Asia Bulk Inc. ("Asiabulk") and IMC Shipping Co. Pte. Ltd. ("IMC"),(collectively, "Defendants"), alleges, upon information and belief, as follows:

1.      This is a case of admiralty and maritime jurisdiction as hereinafter more fully appears and is a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.      At all material times herein, James N. Hood as Liquidating Trustee for the Oceantrade Corporation Liquidating Trust maintained and maintains an address at 285 Highland Avenue, Norwalk, CT, 06854-4017.

3.      On or about October 15, 2005, Oceantrade Corporation ("Oceantrade") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*

4.      On or about October 4, 2007, Oceantrade filed a Chapter 11 Plan of Liquidation ("Plan"), which was confirmed by order of the Bankruptcy Court for the Southern District of New York on December 4, 2007 ("Confirmation Order").

5.      Pursuant to the Plan and the Confirmation Order, James N. Hood was appointed as Liquidating Trustee, with full authority to assert, prosecute, and settle all causes of action including, but not limited to, causes of action on behalf of Oceantrade against third parties relating to accounts receivable.

6.      At all times material herein, Oceantrade  was a business entity organized and existing under the laws of the Marshal Islands with a principal place of business at c/o Bulkamerica Corporation, 137 Rowayton Avenue, Rowayton, Connecticut, 06853.

7.      At all times material herein, Bulkamerica Corporation ("Bulkamerica") was agent for Oceantrade under an agency agreement dated August 31, 2001 and engaged in business transactions on behalf of Oceantrade pursuant to that agreement, including the transaction herein.

8.    Upon information and belief, at all times material herein, Asiabulk was a business entity organized and existing under the laws of a foreign country with a principal place of business at 5 Temasek Boulevard #21-01, Suntec Tower Five, Singapore, 038985.

9.    Upon information and belief, at all times material herein, IMC was a business entity organized and under the laws of Singapore with a principal place of business at 5 Temasek Boulevard #21-01, Suntec Tower Five, Singapore, 038985.

10.    On or about July 16, 2002 Oceantrade chartered the M/V LISA J ("Vessel") to Asiabulk for a one time charter trip of about 20-25 days without guarantee, for a voyage from Casablanca to "USG/EC MEX RGE (intention Coatzacoalcos) ("Charter"). A true and correct copy of the fixture recap of the Charter is attached hereto as Exhibit 1.

11.    The Charter was based on a charter party of the M/V DIANA, dated June 4, 2002, between Polish Steamship Co., as Owner and Asia Bulk as Charterer ("*Pro Forma*"). A true and correct copy of the *Pro Forma* is attached hereto as Exhibit 2. The terms of the *Pro Forma* were amended by the fixture recap. Exhibit 1.

12.    The parties agreed under the terms of the fixture recap that hire was $6,460 a day.

13.    The Charter as drawn-up by the broker incorrectly named Lisa J Navigation Company LLC ("Lisa J"), as Owner rather than Oceantrade. Lisa J was the actual owner of the Vessel whereas Oceantrade was the disponent owner[1] who chartered the Vessel to Asiabulk. This error was corrected by Bulkamerica by way of a revised charter party which was executed by Oceantrade but not Asiabulk. A true and correct copy of the charter party document is

---

[1] A disponent owner is the person or entity who controls the commercial operation of a vessel and is responsible for deciding ports of call and the cargoes to be carried. Very often the disponent owner is not the registered owner having title to the vessel but a party who has previously chartered the vessel from the registered owner or another charterer. PETER BRODIE, DICTIONARY OF SHIPPING TERMS (4th Ed. 2003).

attached hereto as Exhibit 3. All subsequent Hire Statements clearly show that they were issued by Bulkamerica on behalf of Oceantrade, not Lisa J.

14. In addition, the charter party between Lisa J and Oceantrade, dated July 12, 2002 clearly indicates that Oceantrade, and not Lisa J, was the disponent owner at the beginning of the referenced voyage. A true and correct copy of the charter party between Lisa J and Oceantrade is attached hereto as Exhibit 4.

15. Oceantrade took delivery of the Vessel on July 23, 2002 at 2142 hours local time and the Vessel subsequently arrived at Casablanca on July 24, 2002 at 1718 hours local time at which time it was delivered to Asiabulk.

16. Redelivery of the Vessel occurred on August 16, 2002 at 1312 hours GMT.

17. Oceantrade's Final Hire Statement, dated August 16, 2002 erroneously shows redelivery from Asiabulk on August 14, 2002 at 1312 hours GMT and $9,398.74 due Oceantrade. A true and correct copy of the Final Hire Statement, dated August 16, 2002 is attached hereto as Exhibit 5.

18. IMC, on behalf of Asiabulk, denied that Asiabulk had any contract with Oceantrade and refused to pay the outstanding balance due Oceantrade as set forth in the Final Hire Statement, dated August 16, 2002.

19. Asiabulk's position prompted a review of Oceantrade's claim and on January 3, 2007 Oceantrade sent a revised Final Hire Statement showing the correct time of delivery and redelivery and demanding payment of the revised balance in its favour of $21,930.66. A true and correct copy of the revised Final Hire Statement, revised January 3, 2007 is attached hereto as Exhibit 6.

20.    In accordance with the Charter, Oceantrade's claim for payment of sums due is subject to London arbitration under English law, which Oceantrade will initiate in due course.

21.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party in London arbitration proceedings.

22.    This cause of action accrued on August 16, 2002, and upon information and belief, it will take until at least December 31, 2008 to arbitrate this matter to its conclusion.

23.    Based on the preceding, as best can now be estimated, Oceantrade's total claim against Asiabulk is the following:

| | | |
|---|---|---|
| A. | On the principal claim: | $21,930.66 |
| B. | Interest at 6.0% from August 16, 2002 to December 31, 2008: | $ 8,396.14 |
| C. | Costs (arbitrators fees, etc.): | $ 5,000.00 |
| D. | Attorneys' fees | $25,000.00 |
| | Total Sought: | $60,326.80 |

24.    In a telefax to the master of the Vessel dated July 18, 2002 (two days after the execution of the fixture recap) IMC represented itself as the "general agents" for Asiabulk.  A true and correct the telefax dated July 18, 2002 is attached hereto as Exhibit 7.  Moreover, in subsequent correspondence, dated February 27, 2006, IMC held itself out as responsible for the debts and liabilities of Asiabulk and/or as one and the same entity as Asiabulk stating:

> [p]lease be advised that our charterparty dated 16/07/02 is with "Lisa J Navigation Co LLC" and not "Oceantrade Corporation." There is no reason for us to give USD9,398.74 to "Oceantrade Corporation" since we have no contract with this company.

A true and correct copy of the email dated February 27, 2006 quoted above is attached hereto as Exhibit 7. The February 27, 2006 email from IMC was signed "For and on behalf of Asiabulk Inc."

25.    Upon information and belief, both Asiabulk and IMC have their principle places of business at 5 Temasek Boulevard #21-01, Suntec Tower Five, Singapore, 038985.

26.    Upon information and belief, Asiabulk and IMC have commingled funds and/or otherwise fail to observe corporate formalities by allowing IMC to pay for debts owed on behalf of Asiabulk rather than IMC.

27.    Upon information and belief, IMC is the alter ego of Asiabulk or vice versa and/or Asiabulk and IMC have a relationship that is not "arms length."

28.    Neither Asiabulk nor IMC is found within the Southern District of New York but they do have assets, good or chattels within the jurisdiction, to wit: funds or accounts held in the name(s) of Asiabulk Inc. and/or Asia Bulk Inc. and/or IMC Shipping Co. Pte. Ltd. with, upon information and belief, the following financial institutions:  ABN Amro Bank; American Express Bank; Banco Popular; Bank of America, N.A.; Bank of China; Bank Leumi USA; The Bank of New York; BNP Paribas; Calyon Investment Bank; Citibank, N.A.; Commerzbank; Deutsche Bank Trust Company Americas; HSBC Bank USA, N.A.; JPMorgan Chase Bank, N.A.; Standard Chartered Bank; Société Générale; UBS AG; Wachovia Bank, N.A.; China Trust Bank; Industrial Bank of Korea; Shin Han Bank; Great Eastern Bank; Nara Bank; United Orient Bank; or any other financial institution within the Southern District of New York.

29.    While all disputes arising out of the Charter are to be arbitrated in London, England, the action herein is submitted in accordance with Rule B of the Supplemental Rules of

6

Certain Admiralty Claims of the Federal Rules of Civil Procedure, as well as 9 U.S.C. § 8, and is not and cannot be considered a waiver of the parties' agreement to arbitrate.

**WHEREFORE**, Plaintiff demands judgment as follows:

1.      That process in due form of law according to the practice of this Court in the form of a writ of maritime attachment be issued against bank accounts and other property of Asiabulk Inc. a/k/a Asia Bulk Inc. and IMC Shipping Co. Pte. Ltd. with the financial institutions noted above in paragraph 28;

2.      That Asiabulk a/ka Asia Bulk Inc. and IMC Shipping Co. Pte. Ltd. and any other person claiming an interest therein may be cited to appear and answer the matters aforesaid;

3.      That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as a Judgment of this Court;

4.      That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

5.      That this Court award Plaintiff's its attorney's fees and costs of this action; and,

6.      That this Court grant James N. Hood as Liquidating Trustee of the Oceantrade Corporation Liquidating Trust, such other and further relief which it may deem just and proper.

Dated: New York, New York
.       March __5__, 2008

HOLLAND & KNIGHT LLP

By: _____

James H. Hohenstein
Lissa D. Schaupp
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
(212) 513-3200
Telefax: (212) 385-9010
E-mail: jim.hohenstein@hklaw.com
          lissa.schaupp@hklaw.com

Attorneys for Plaintiff,
*James N. Hood as Liquidating Trustee*
*of the Oceantrade Corporation*
*Liquidating Trust*

## VERIFICATION

STATE OF NEW YORK            )

:ss.:

COUNTY OF NEW YORK          )

JAMES H. HOHENSTEIN, being duly sworn, deposes and says:

I am a member of the firm of Holland & Knight LLP, counsel for James N. Hood as Liquidating Trustee of the Oceantrade Corporation Liquidating Trust ("Plaintiff"), plaintiff in the foregoing action. I have read the foregoing Verified Complaint and know the contents thereof, and the same are true and correct to the best of my knowledge. I have reviewed documentation provided to me by Plaintiff and corresponded with Plaintiff regarding this matter. I am authorized by Plaintiff to make this verification, and the reason for my making it as opposed to the Plaintiff is that he is not within the jurisdiction of this Honorable Court.

_____
James H. Hohenstein

Sworn to before me this
5th day of March, 2008

_____
Notary Public

DIALYZ E. MORALES
Notary Public, State Of New York
No. 01MO6059215
Qualified In New York County
Commission Expires June 25, 2011

# 5116608_v1

9

# EXHIBIT 1

JAMES HOOD LLC    Fax:2038319757    Jan 21 2008 10:32am    P003
Sent 7/18/2C  9:33:1 63    Page 1 of 4

<fne-bulkam@att.net>
Subject: (FNE) lisa j / as__bulk    User: LAP

Ref: 020718-FNE0000209 - Bulkamerica Corp phone (203)853-0200 fax (203) 853-2650

FROM: SSY NEW YORK
DATE: 16/7/02
TIME: 12:42:02 PM

frank / evan

'LISA J' - ASIA BULK
------------------------

PLS FIND HEREWITH FINAL FIXTURE RECAP WITH ALL SUBS IN ORDER
CP DATED TODAY 16 JULY 2002

M/V Lisa J
Ex Names: Pacific Sky, Manila Progress, Sanko Poinsettia
SDBC, Marshall Islands Flag, Built March 1985
Summer DWAT 40461M Tons on 11.020 Meters SSW Draft
TPC on Full SSW: 47.69M Tons
LOA: 184.80 Meters / Beam: 30.50 Meters
GRT/NRT: 23279 / 13356
Grain / Bale: 50,748 CBM / 50,039 CBM
Cubic Breakdown per hold (all CBM)

| Hold | Grain | Bale |
|------|-------|------|
| 1 | 8,570 | 8,379 |
| 2 | 11,125 | 10,991 |
| 3 | 10,301 | 10,161 |
| 4 | 11,122 | 10,987 |
| 5 | 9,630 | 9,521 |

5HO/HA
Hatch cover type: McGregor fore and aft opening
Hatch dimensions:    1       15.2 x 15.0
                     2-5     19.2 x 15.0M
4 x 25 Ton Cranes
Speed and consumption:
Laden abt13.0kts on abt 23mt IFO + abt 1.5mt MDO
Ballast abt 13.5kts on abt 23mt IFO + abt 1.5mt MDO
In Port:
Gear Idle:              abt 1.4mt MDO per day
Gear Working:  abt 2 MT MDO per day
All Details About

-charts waiting owners final confirmation on below points a/b/c/ grabs
 after checking with master but office advises should be acceptable.
-Owners to confirm vessel can discharge basis the following restrictions
 basis arrival fully laden.

a) Height of the hoppers themselves  (from deck to top edge of hopper)
   2 of them abt 20'
   1 of them abt 25'

b)Waterline to top of berth
  At high water - 8'
  At low water - 12'

c) Distance frm edge pier to center of hopper abt 12'

Grabs
--------

NONE


++

-WLTHC laden ballast – reverting
-crane outreach – 6.2 m
-pedestal height from deck – 6.2 m
-deck to bottom of jib in horizontal position ~ 8.2 m


~ OWNERS WARRANT VSL IS A SINGLE DECK SELF TRIMMING BULK CARRIER,
SUITABLE GRAB DISCHARGE, BR/ENG AFT, CLASSED LLOYDS 100A1 OR EQUIV
WITH CLASSIFICATION SOCIETY BEING FULL MEMBER OF I.A.C.S., NO
CENTRE LINE BULK HEADS OR BEAMS, VSL COVERED BY ITF OR EQUIVALENT,
ISM COVERED, AND FULLY SUITABLE AND FITTED IN ALL RESPECTS FOR CHRTRS
INTENDED
TRADE.


- LAST 3 CARGOES FROM THE LAST Coal / Copper Concentrates / Grain
- LAST 3 PORTS OF CALL Huelva (will be there 21) /Maputo / Tuticorin /Dahej
- UPDATED ITINE INCL LAST PORT OF CALL AGENT CONTACT DETAILS:
  Vessel ETA Huelva 21 July 2002 / 2300 hrs LT.
  Agents: ERSHIP
          MARINA  26, Apdo.306
          21001 – Huelva
          contact: Manuel Viegas
          PHONE: 34 959 21 51 01
          FAX    : 34 959 26 10 05
          Telex 75534 ATM H
          AOH 34 959 25 67 30
- OWS FULL STYLE: Lisa J Navigation Company LLC.
- PORT OF REGISTRY: Majuro
- EX.NAME Pacific Sky
- CLASS NK
- GRT/NRT 23279 / 13356
- H/M VALUE + UNDERWRITER 100% Norweigan Market through Henschien $9M
- MASTER'S NAME: Morandarte
- Vessel's Telex no. (s): SAT C: 453816060 / SAT A: 1554521
- Vessel's Phone no. (s): 1554521
- Vessel's Fax no.    (s): 1554521
- Vessel's e-mail no. (s): 453816060@c.station12.com
<mailto:453816060@c.station12.com>
- CALL SIGN V7BV4
- TPC ON FULL DWT 47.69MT
~  P&I Club: GARD


ALL DETAILS ABOUT

- ACCOUNT ASIA BULK
- DELY AFSPS CASABLANCA ATDNSHINC
- LAYCAN 24/31 JULY – – 1 TCT VIA SPS SBS SAS AA AWISL WITH INTENDED CARGO BHF
- REDLY DLOSP 1SF OUT OF USG/EC MEX RGE (INT. COATZACOALCOS) IN CHOPTN
  ATDNSHINC
- DURATION ABT 20/25 DYS WOG
- HIRE USD 6450 PDPR INCLOT
- HOLD CLEANLINESS
  HOLDS ON DELIVERY TO BE IN ALL  RESPECTS READY TO RECIEVE A CARGO  OF BHF
- LOI CL AS PER OWNS' FAX
- CHARTERERS TO HAVE THE OPTION OF HOLDING A INSPECTION OF HER  CRANES
  AT ANY TIME WITHOUT INCONVENIENCE TO MASTER AND VESSELS OPERATION. THE
  OWNERS OR MASTER GIVING EVERY FACILITY AND ASSISTANCE TO CARRY THIS OUT.

- ANY TIME LOST DUE DEFICIENCY OF VESSEL'S CRANES TO COUNT AS OFF-HIRE

Subject: [FNE] lisa j / as_bulk

```
       PRO-RATA ACCORDING TO THE TOTAL NUMBER OF WORKING HATCHES AND OWS TO
       EMPLOY SHORE CRANES WOUT ANY DELAY IF VESSEL CAN NOT RECTIFY THE
       SITUATION WITHIN 10 HRS.

     - BKRS ON DELY AS ONBOARD (ABT 5/600MT IFO .../ ABT 40/60MT MDO -    BKRS
       ON REDLY TO BE AS ON BOARD. PRICES USD 150 PMT FOR IFO AND MDO
       USD 250 PMT

     - CHRTS TO PAY FOR ESTIMATED CONSUMPTION TOGE WITH 1ST HIRE PAYMENT
       ANY DISCREPANCIES , IF ANY, WILL BE SETTLED ON REDELIVERY
     - ILOHC USD 3500 LS
     - C/V/E ETC USD 1000 PER 30 DAYS PRORATA
     - SUB SHIPPERS/RECEIVERS CONFMATION TBD W/IN NOON  MONDAY
     - 3.75 PCT ADCOM + 1.25 FERROBULK + 1.25 SSY-NY
     - CHRTRS OPTION USE VSSLS CRANES INCL HOOKING THEIR GRABS WHICH ARE MECH
       12 CBM GRABS
     -OWISE AS PER ''DIANA'' CP DATED 4/06/2002, AS PER MAIN TERMS
      AGREED, SUB LOGICAL ALTERATION, DELETIONS AND ADDITIONS, AND FOLL
      AMENDMENTS:

     ln 71  - del 'customary and recomendable' ins 'compulsory'
     ln 110 - ins '5/3/2/1'
     ln 158 - del 'or tally clerk'
     ln 214 - arbitration new york
     ln 266 - after 'light' ins 'as on board'

     cl 28  - as per main term description
     Cl 43 1st Paragraph: After "1984", add "and any amendment thereto"

     cl 44  - del and ins (BUT ADD AFTER 'CHARTERERS' WORDS 'OR STEVEDORES')
     Stevedores, although appointed and paid for by the respective voyage,
     Charterers under this Charter Party to work under the supervision of master.
     Should any damage be caused to the vessel or her fittings by the stevedores,
     the Master has to try to let stevedores repair such damage and try to settle
     the matter directly with them.
     The Charterers shall not be responsible for any damage caused by stevedores to
     the vessel unless the Master endeavours to obtain written acknowledgement of
     the damage from the concerned stevedores and immediately notifies the
     Charterers or their agents of such damage within 24 hours from occurrence or
     latest prior to departure from the port of occurrence.  In case refusal of
     stevedores to acknowledge responisbility an independent surveyor to be
     appointed and cost to be paid by the party found to be wrong.

     The Charterers shall have the liberty to redeliver the vessel without
     repairing the damage for which the Charterers are responsible, as long as the
     same do not affect the vessel's seaworthiness and normal working capacity, but
     the Charterers undertake to reimburse costs of repair against the production
     of repair bills by reairers or dockyard unless otherwise agreed.  Additional
     time for repair works, if any, to be mutually negotiated but ultimately to be
     for Charterers' account.  Any damages affecting seaworthiness or normal
     working capability and/or class should be repaired immediately, in order for
     the vessel to be able to perform, at Charterers' time and expense.

     cl 55  - after 'hatches' ins ', unless cause by default or negligence of
     charterers/charterers representative/charterers employees'

     cl 58  - arbitration new york
     At end, add "Should the total amount of the claim not exceed USD50,000, the
     matter to be settled according to the LMAA Small Claims Procedure in its most
     recent form."

     ADDITIONAL CLAUSES:

     1) BIMCO ISM Clause

     2) Charterers have the right to employ an independent weather routing to
```

\ine-bulkam@att.net>
Subject: [FNE] lisa j / as_bulk

monitor the vessel's speed-bunker consumption performance. In case of
discrepancy between the ship's logs and the weather routing companies
findings, the latter to be taken as ruling.

+++

CHRS RE-CONFIRMED THAT GRABS ARE MECH OF 12 CBM CAPACITY (AS PER DESCRIPTION
GIVEN DURING NEGO) - PLS LET US HAVE OWNS CONFIRMATION

THANKS FOR YOUR KIND SUPPORT IN THIS FIXTURE

BRGDS/SSY-NY
203-356-2000
EVAN GALANIS            AOH: 203-324-3356        MOB: 203-249-2395

# EXHIBIT 2

12/07 '02 VEN 19:18 FAX +39 010 593947    FERROBULK SrL GENOA    Jan 21 2008 10:33am P008    ☒001

JAMES HOOD CLERK    Fax: 203631937




Copyright © 1981
of Ship Brokers & Agents (U.S.A.), Inc. (ASBA), New York
Published by: The Association
This definitive work may not be copied without
the permission of the copyright owners.
Code Name: ASBATIME

## TIME CHARTER
### New York Produce Exchange Form



November 8th, 1913 - Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946; June 12th, 1981

|  |  |  |
|---|---|---|
| | THIS CHARTER PARTY, made and concluded in ...HAMBURG........ | 1 |
| | ......................... day of ......June.......... 2002. 19....... | 2 |
| Owners | between Messrs. POLISH STEAMSHIP CO., Szczecin as Managing.......... | 3 |
| | ...................................................................... Owners of | 4 |
| | the good ....Cypriot flag........... Steamship/Motorship "DIANA" - see cl. 38... | 5 |
| Description | of ....................... of ......25,206.......... tons gross register, and | 6 |
| of | ......14,175........... tons net register, having engines of ............ | 7 |
| Vessel | horsepower and with hull, machinery and equipment in a throughly efficient | 8 |
| | state, and classed ...KM BC ESP HC......... .................... of about | 9 |
| | ........1,857,581............. cubic feet grain/bale capacity ............... | 10 |
| | ....................................................... and about | 11 |
| | ........41,176............. long/metric tons deadweight capacity (cargo and | 12 |
| | bunkers, including fresh water and stores not exceeding ............... | 13 |
| | long/metric tons) on a salt water draft of ......11.55 m............ on summer | 14 |
| | freeboard, inclusive of permanent bunkers, which are of the capacity of about | 15 |
| | .......................................... long/metric tons of | 16 |

**but possible including DAP/NPK or similar grades duration about 20/25 days without guarantee**

|  |  |  |
|---|---|---|
| | ........................................ fuel oil and ........... | 17 |
| | long/metric tons of .............................................. and | 18 |
| | capable of steaming, fully laden, under good weather conditions about | 19 |
| | .........14........ knots on a consumption of about ....34.5........... | 20 |
| | .................................................................. | 21 |
| | long/metric tons of ...IFO................................................ | 22 |
| | .................................................................. | 23 |
| | .................................................................. | 24 |
| | now ............................................................ and | 25 |
| Charterers | .................................................................. | 26 |
| | Messrs. ASIA BULK INC......... Charterers of the City of ......Singapore...... | 27 |
| Duration | The Owners agree to let and the Charterers agree to hire the vessel from the | 28 |
| | time of delivery for about ....one timecharter trip via safe port(s) safe....... | 29 |
| | berth(s) safe anchorage(s), always afloat, always within IWL, with........ | 30 |
| Sublet | intended cargo UNK (usually phosrock) within below mentioned trading limits. | 31 |
| **stitute any waiver of Owners' liabilities hereunder.** | The Owners shall have liberty to sublet the vessel for all or any part of the | 32 |
| | time covered by this Charter, but Charterers shall remain responsible for the | 33 |
| **/Delivery** | fulfillment of this Charter. Acceptance of delivery by Charterers shall not con... | 34 |
| | Vessel shall be placed at the disposal of the Charterers on arrival first sea.... | 35 |
| | pilot station CASABLANCA, any time, day or night, Sundays and Holidays...... | 36 |
| | included. Owners shall give not less than fully fixed 6 days approximate... | 37 |
| | and 5/3/2 days definite notice. | 38 |
| | in such dock or at such berth or place (where she may safely lie, always afloat, | 39 |
| | at all times of tide, except as otherwise provided in Clause 6) as the Charterers | 40 |
| **arrival first load port** | may direct. If such dock, berth or place be not available, time shall count as | 41 |
| | provided in Clause 5. Vessel on her delivery shall be ready to receive cargo with | 42 |
| **to independent surveyor's satisfaction for the intended cargo** | clean-swept holds and tight, staunch, strong and in every way fitted for ordi- | 43 |
| | nary cargo service, having water ballast and with sufficient power to operate all | 44 |
| | cargo-handling gear simultaneously (and with full complement of officers and | 45 |
| | crew for a vessel of her tonnage), to be employed in carrying lawful merchan- | 46 |
| Dangerous | dise excluding any goods of a dangerous, injurious, flammable or corrosive | 47 |
| Cargo | nature unless carried in accordance with the requirements or recom- | 48 |
| | mendations of the proper authorities of the state of the vessel's registry and of | 49 |
| | the states of ports of shipment and discharge and of any intermediate states or | 50 |
| | ports through whose waters the vessel must pass. Without prejudice to the | 51 |
| | generality of the foregoing, in addition the following are specifically excluded: | 52 |
| Cargo | livestock of any description, arms, ammunition, explosives ............... | 53 |
| Exclusions | .................................................................. | 54 |
| | see clause no. 37.- .................................................... | 55 |
| | .................................................................. | 56 |
| Trading | .................................................................. | 57 |
| Limits | The vessel shall be employed in such lawful trades between safe ports and | 58 |
| | places within ........................................................ | 59 |
| | ..............see clause no. 36.-............ excluding ............... | 60 |
| | .................................................................. | 61 |
| | .................................................................. | 62 |
| | as the Charterers or their agents shall direct, on the following conditions: | 63 |

TO: 557 - N.Y.

12/07 '02 VEN 19:20 FAX +39 010 593947     JAMES HOOD LLC     Fax:2038319757     FERROBULK SrL GENOA     Jan 21 2008 10:33am P010

COPY

Ø002

also drinking water; lube-oils and
garbage disposal

**Owners to Provide**

1. The Owners shall provide and pay for the insurance of the vessel and for all provisions, cabin, deck, engine-room and other necessary stores, including boiler water; shall pay for wages, consular shipping and discharging all fees of the crew and charges for port services pertaining to the crew; shall maintain vessel's class and keep her in a thoroughly efficient state in hull, machinery and equipment for and during the service.

`all fees of the crew and`

`holds`

63
66
67
68
69

**Charterers to Provide**

`and diesel`

2. The Charterers, while the vessel is on hire, shall provide and pay for all the fuel except as otherwise agreed, port charges, pilotages, towages, agencies, commissions, consular charges (except those pertaining to individual crew members or flag of the vessel), and all other usual expenses except those stated in Clause 1, but when the vessel puts into a port for causes for which vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of illness of the crew shall be for Owners' account. Fumigations ordered because of cargoes carried or ports visited while vessel is employed under this Charter shall be for Charterers' account. All other fumigations shall be for Charterers' account after vessel has been on charter for a continuous period of six months or more.

and/or vessel which may be necessitated because of vessel's nationality or flag or otherwise (including all garbage removal or shore watchmon, if any)

`customary`
`and recommendable`

`or Owners'`
`nationality`

`and/or
Owners are`

70
71
72
73
74
75
76
77
78
79
80

except agreed disbursement charges for Owners' matters which to be deducted from hire

Charterers shall provide necessary dunnage and shifting boards, also any extra fittings requisite for a special trade or unusual cargo, but Owners shall allow them the use of any dunnage and shifting boards already aboard vessel.

81
82
83
84

**Bunkers on Delivery and Redelivery**

3. The Charterers on delivery, and the Owners on redelivery, shall take over and pay for all fuel and diesel oil remaining on board the vessel as hereunder. The vessel shall be delivered with:
long/metric* tons of fuel oil at the price of ........................ per ton;
........................ tons of diesel oil at the price of ........................
per ton. The vessel shall be redelivered with: ........................
tons of fuel oil at the price of ........................ per ton;
........................ tons of diesel oil at the price of ........................ per ton

85
86
87
88
89
90
91
92
93
94

(*Same tons apply throughout this clause)

95

**Rate of Hire**

4. The Charterers shall pay for the use and hire of the said vessel at the rate of ........................ daily, or United States Currency per ton on vessel's total deadweight carrying capacity, including bunkers and stores, on ........................ summer freeboard, per calendar month, commencing on and from the day of her delivery, as aforesaid, and at and after the same rate for any part of a month; hire shall continue until the hour of the day of her redelivery in like good order and condition, ordinary wear and tear excepted, to the Owners (unless vessel lost) at on dropping last outward sea pilot 1 safe port out of U.S. GULF/EAST COAST MEXICO RANGE any time day or night Sundays and Holidays included ........................ unless otherwise mutually agreed. Charterers shall give Owners not less than 20 ........................ days notice of vessel's expected date of redelivery and probable port ,and 7 days. approximate and 3/2 days definite notice of expected port

except Charterers to have the option of redelivering the vessel against paying Owners USD 4,000,— lumpsum in lieu of hold cleaning

`time`

`day`

96
97
98
99
100
101
102
103
104
105
106
107
108
109
110

**Redelivery Areas and Notices**

**Hire Payment and Commencement**

5. Payment of hire shall be made so as to be received by Owners or their designated payee in New York,

........................ In United States Currency, in funds available to the Owners on the due date, semi-monthly in advance, and for the last half month or part of same the approximate amount of hire, and should same not cover the actual time, hire shall be paid for the balance day by day as it becomes due, if so required by Owners. Failing the punctual and regular payment of the hire, or on any breach of this Charter, the Owners shall be at liberty to withdraw the vessel from the service of the Charterers without prejudice to any claims they (the Owners) may otherwise have on the Charterers. Time shall count from 7 A.M. on the working day following that on which written notice of readiness has been given to Charterers or their agents before 4 P.M., but if required by Charterers, they shall have the privilege of using vessel at once, in which case hire shall be on hire from the commencement of work.

`every 15 days`

`15 days`

`unless a bank guarantee and deposit is made by Charterers`

`see cl. 49`

111
112
113
114
115
116
117
118
119
120
121
122
123
124
125
126
127

**Cash Advances**

Cash for vessel's ordinary disbursements at any port may be advanced, as required by the Captain, by the Charterers or their agents, subject to 2 1/2 percent commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application of such advances.

128
129
130
131
132

**Berths**

6. Vessel shall be loaded and discharged in any dock or at any berth or place that Charterers or their agents may direct, provided the vessel can safely lie always afloat at any time of tide, except at such places where it is customary

`safe`

`safe`

133
134
135

JAMES HOOD LLC    Fax:2038319757    Jan 21 2008 10:34am P011

FERROBULK SrL GENOA

@003

for similar size vessels to safely lie aground.                                                    136

**Spaces Available**

7.  The whole reach of the vessel's holds, decks, and usual places of    137
loading (not more than she can reasonably and safely stow and carry), also    138
accommodations for supercargo, if carried, shall be at the Charterers' dis-    139
posal, reserving only proper and sufficient space for ship's officers, crew,    140
tackle, apparel, furniture, provisions, stores and fuel.    141

**Prosecution of Voyages**

8.  The Captain shall prosecute his voyages with due despatch, and shall    142
render all customary assistance with ship's crew and boats. The Captain    143  [See cl. 53]
(although appointed by the Owners) shall be under the orders and directions of    144
the Charterers as regards employment and agency; and Charterers are to    145
perform all cargo handling at their expense under the supervision of the    146
Captain, who is to sign the bills of lading for cargo as presented in conformity    147
with mate's or tally clerk's receipts. However, at Charterers' option, the Chart-    148
erers or their agents may sign bills of lading on behalf of the Captain always in    149

**Bills of Lading**

conformity with mate's or tally clerk's receipts. All bills of lading shall be    150
without prejudice to this Charter and the Charterers shall indemnify the Own-    151
ers against all consequences or liabilities which may arise from any inconsis-    152
tency between this Charter and any bills of lading or way bills signed by the    153
Charterers or their agents or by the Captain at their request.    154

**Conduct of Captain**    ⌐written

9.  If the Charterers shall have reason to be dissatisfied with the conduct of    155
the Captain or officers, the Owners shall, on receiving particulars of the    156
complaint, investigate the same, and, if necessary, make a change in the    157
appointments.    158

**Supercargo and Meals**

10.  The Charterers are entitled to appoint a supercargo, who shall accom-    159
pany the vessel and see that voyages are prosecuted with due despatch. He is    160
to be furnished with free accommodation and same fare as provided for    161
Captain's table, Charterers paying at the rate of .......... USD 10.00 .......... per day.    162

The Captain executing the voyages under this C/P with the same due care and diligence as if trading for Owners' account

Owners shall victual pilots and customs officers, and also, when *authorized by*    163
Charterers or their agents, shall victual tally clerks, stevedore's foreman, etc.,    164
Charterers paying at the rate of .......... USD 5.00 .......... per meal for all such victual-    165
ling.    166

**Sailing Orders and Logs**

11.  The Charterers shall furnish the Captain from time to time with all    167
requisite instructions and sailing directions, in writing, and the Captain shall    168
keep full and correct deck and engine logs of the voyage or voyages, which are    169
to be patent to the Charterers or their agents, and furnish the Charterers, their    170
agents or supercargo, when required, with a true copy of such deck and engine    171
logs, showing the course of the vessel, distance run and the consumption of    172
fuel. [in English]              [properly]    173  [be. Vessel]
174  [has natural]

**Ventilation**

12.  The Captain shall use diligence in caring for the ventilation of the    174
cargo, including ventilation or restriction of ventilation as the case may    175  [ventilation]
176  [only.]

**Continuation**

13.  The Charterers shall have the option of continuing this Charter for a    176
further period of ..........    177
..........    178

**Laydays/Cancelling**

14.  If required by Charterers, time shall not commence before ..........    179
09.01 hours 14th June 2002.......... and should vessel not have given written    180  [delivered]
notice of readiness on or before .......... 17th June 2002 - 24.00 hours .......... but not    181
later than 4 P.M. Charterers or their agents shall have the option of cancelling    182
this Charter at any time not later than the day of vessel's readiness.    183

**Off Hire**    [deficiency of]

15.  In the event of the loss of time from deficiency and/or default of officers    184  [and/or]
or crew or deficiency of stores, fire, breakdown of, or damages to, hull,    185  [strike]
machinery or equipment, grounding, detention by average accidents to ship or    186
cargo unless resulting from inherent vice, quality or defect of the cargo,    187  [detention]
drydocking for the purpose of examination or painting bottom, or by any other    188  [or arrest]
similar cause preventing the full working of the vessel, the payment of hire and    189  [of the ship]
overtime, if any, shall cease for the time thereby lost. Should the vessel deviate    190
or put back during a voyage, contrary to the orders or directions of the    191  [use]
Charterers, for any reason other than accident to the cargo, the hire is to be    192
suspended from the time of her deviating or putting back until she is again in    193
the same or equidistant position from the destination and the voyage resumed    194  [whatsoever]
therefrom. All fuel used by the vessel while off hire shall be for Owners'    195
account. In the event of the vessel being driven into port or to anchorage    196
through stress of weather, trading to shallow harbors or to rivers or ports with    197
bars, any detention of the vessel and/or expenses resulting from such deten-    198
tion shall be for the Charterers' account. If upon the voyage the speed be    199
reduced by defect in, or breakdown of, any part of her hull, machinery or    200
equipment, the time so lost, and the cost of any extra fuel consumed in    201
consequence thereof, and all extra expenses shall be deducted from the hire.    202

**Total Loss**

16.  Should the vessel be lost, money paid in advance and not earned    203
(reckoning from the date of loss or being last heard of) shall be returned to the    204
Charterers at once.    205

**Exceptions**

The act of God, enemies, fire, restraint of princes, rulers and people,    206
and all dangers and accidents of the seas, rivers, machinery, boilers and steam    207

JAMES HOOD LLC    Fax:2038319757    Jan 21 2008 10:35am P012/063

FERROBULK SrL GENOA    004

| | | |
|---|---|---|
| **Liberties** | navigation, and errors of navigation throughout this Charter, always mutually excepted. | 208<br>209 |
| | The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the purpose of saving life and property. | 210<br>211<br>212 |
| **Arbitration** | 17. Should any dispute arise between Owners and the Charterers, the ~~matter in dispute shall be referred to three persons at New York, one to be~~ ~~appointed by each of the parties hereto, and the third by the two so chosen;~~ ~~their decision, or that of any two of them, shall be final and for the purpose of~~ ~~enforcing any award this agreement may be made a rule of the Court. The~~ ~~arbitrators shall be commercial men conversant with shipping matters.~~ | 213<br>214<br>215<br>216<br>217<br>218 |

arbitration in London where English Law to apply. See cl. 58.-

| | | |
|---|---|---|
| **Liens** | 18. The Owners shall have a lien upon all cargoes and all sub-freights for any amounts due under the Charter, including general average contributions, and the Charterers shall have a lien on the ship for all monies paid in advance and not earned, and any overpaid hire or excess deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which might have priority over the title and interest of the Owners in the vessel. | 219<br>220<br>221<br>222<br>223<br>224<br>225 |

and sub-hires

| | | |
|---|---|---|
| **Salvage** | 19. All derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and crew's proportion. | 226<br>227 |

| | | |
|---|---|---|
| **General Average** | General average shall be adjusted, according to York-Antwerp Rules 1974 ~~at such port or place in the United States as may be selected by the~~ ~~Owners and as to matters not provided for by these Rules, according to the~~ ~~laws and usage at the port of New York.~~ In such adjustment disbursements in foreign currencies shall be exchanged into ~~United States money~~ at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted at the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship. ~~Average agreement or bond and such additional security as may be~~ ~~required by the Owners, must be furnished before delivery of the goods. Such~~ ~~cash deposit as the Owners or their agents may deem sufficient as additional~~ ~~security for the contribution of the goods and for any salvage and special~~ ~~charges thereon, shall, if required, be made by the goods, shippers, consign-~~ ~~ees or owners of the goods to the Owners before delivery. Such deposit shall~~ ~~at the option of the Owners, be payable in United States money and remitted to~~ ~~the adjuster. When so remitted the deposit shall be held in a special account at~~ ~~the place of adjustment in the name of the adjuster, pending settlement of the~~ ~~general average and refunds or credit balances, if any, shall be paid in United~~ ~~States money.~~ | 228<br>229<br>230<br>231<br>232<br>233<br>234<br>235<br>236<br>237<br>238<br>239<br>240<br>241<br>242<br>243<br>244<br>245<br>246<br>247 |

amended 1990, or any subsequent amendment thereof current at the time of the casualty in London.

the same currency as hire payable under this Charter Party

| | | |
|---|---|---|
| **York-Antwerp Rules** | Charterers shall procure that all bills of lading issued during the currency of the Charter will contain a provision to the effect that general average shall be adjusted according to York-Antwerp Rules 1974 and will include the "New Jason Clause" as per Clause 23. Hire not to contribute to General Average | 248<br>249<br>250<br>251 |

amended 1990, or any subsequent amendments

| | | |
|---|---|---|
| **Drydocking** | 20. ~~The vessel was last drydocked~~ ............................... The ~~Owners shall have the option to place the vessel in drydock during the cur-~~ ~~rency of this Charter at a convenient time and place, to be mutually agreed~~ ~~upon between Owners and Charterers, for bottom cleaning and painting~~ ~~and/or repair as required by class or dictated by circumstances. Payment of~~ ~~hire shall be suspended upon deviation from Charterers' service until vessel is~~ ~~again placed at Charterers' disposal at a point not less favorable to Charterers~~ ~~than when the hire was suspended~~ ............................... | 252<br>253<br>254<br>255<br>256<br>257<br>258<br>259<br>260<br>261 |

Owners shall also provide on the vessel for night work adequate electric light to enable all hatches to be worked safely and simultaneously.

| | | |
|---|---|---|
| **Cargo Gear** | 21. Owners shall maintain the cargo-handling gear of the ship which is as follows: ... see clause 28 ... | 262<br>263<br>264<br>265 |
| | providing gear (for all derricks or cranes) capable of lifting capacity as described. ~~Owners shall also provide on the vessel for night work lights as on~~ ~~board, but all additional lights over these on board shall be at Charterers'~~ expense. The Charterers shall have the use of any gear on board the vessel. If required by Charterers, the vessel shall work night and day and all cargo-handling gear shall be at Charterers' disposal during loading and discharging. In the event of disabled cargo-handling gear, or insufficient power to operate the same, the vessel is to be considered to be off hire to the extent that time is actually lost to the Charterers and Owners to pay stevedore stand-by charges occasioned thereby. If required by the Charterers, the Owners are to bear the cost of hiring shore gear in lieu thereof. Vessel to remain on-hire during such periods | 266<br>267<br>268<br>269<br>270<br>271<br>272<br>273<br>274<br>275<br>276 |

**Stevedore Stand-by**

upto non-cancelled shift/gang per break down and time if any

| | | |
|---|---|---|
| **Crew Overtime** | 22. ~~In lieu of any overtime payments to officers and crew for work ordered~~ ~~by Charterers or their agents, Charterers shall pay Owners $~~ ............................... ~~per month or pro rata.~~ | 277<br>278<br>279 |

JAMES HOOD LLC    Fax:2038319757    Jan 21 2008 10:42am P013/063

12/01  02 VEN 19:22 FAX +39 010 583947    FERROBULK SrL GENOA    图005

| Clauses Paramount | 23. ~~The following clause is to be included in all bills of lading issued hereunder.~~ | 280 |
| | ~~This bill of lading shall have effect subject to the provisions of the~~ | 281 |
| | ~~Carriage of Goods by Sea Act of the United States, the Hague Rules, or the~~ | 282 |
| | ~~Hague-Visby Rules, as applicable, or such other similar national legislation as~~ | 283 |
| | ~~may mandatorily apply by virtue of origin or destination of the bills of lading,~~ | 284 |
| | ~~which shall be deemed to be incorporated herein and nothing herein con-~~ | 285 |
| | ~~tained shall be deemed a surrender by the carrier of any of its rights or~~ | 286 |
| | ~~immunities or an increase of any of its responsibilities or liabilities under said~~ | 287 |
| | ~~applicable Act. If any term of this bill of lading be repugnant to said applicable~~ | 288 |
| | ~~Act to any extent, such term shall be void to that extent, but no further.~~ | 289 |
| | ~~This Charter is subject to the following clauses all of which are to be~~ | 290 |
| | ~~included in all bills of lading issued hereunder.~~ | 291 |
| | | 292 |
| New Both- to- Blame Collision Clause | ~~If the ship comes into collision with another ship as a result of the~~ | 293 |
| | ~~negligence of the other ship and any act, neglect or default of the master,~~ | 294 |
| | ~~mariner, pilot or the servants of the carrier in the navigation or in the manage-~~ | 295 |
| | ~~ment of the ship, the owners of the goods carried hereunder will indemnify the~~ | 296 |
| | ~~carrier against all loss or liability to the other or non-carrying ship or her~~ | 297 |
| | ~~owners insofar as such loss or liability represents loss of, or damage to, or any~~ | 298 |
| | ~~claim whatsoever of the owners of said goods, paid or payable by the other or~~ | 299 |
| | ~~non-carrying ship or her owners to the owners of said goods and set off,~~ | 300 |
| | ~~recouped or recovered by the other or non-carrying ship or her owners as part~~ | 301 |
| | ~~of their claim against the carrying ship or carrier.~~ | 302 |
| | ~~The foregoing provisions shall also apply where the owners, operators~~ | 303 |
| | ~~or those in charge of any ships or objects other than, or in addition to, the~~ | 304 |
| | ~~colliding ships or objects are at fault in respect to a collision or contact.~~ | 305 |
| New Jason Clause | In the event of accident, danger, damage or disaster before or after | 306 |
| | commencement of the voyage resulting from any cause whatsoever, whether | 307 |
| | due to negligence or not, for which, or for the consequences of which, the | 308 |
| | carrier is not responsible, by statute, contract, or otherwise, the goods, ship- | 309 |
| | pers, consignees, or owners of the goods shall contribute with the carrier in | 310 |
| | general average to the payment of any sacrifices, losses, or expenses of a | 311 |
| | general average nature that may be made or incurred, and shall pay salvage | 312 |
| | and special charges incurred in respect of the goods. | 313 |
| | If a salving ship is owned or operated by the carrier, salvage shall be | 314 |
| | paid for as fully as if salving ship or ships belonged to strangers. Such deposit | 315 |
| | as the carrier or his agents may deem sufficient to cover the estimated con- | 316 |
| | tribution of the goods and any salvage and special charges thereon shall, if | 317 |
| | required, be made by the goods, shippers, consignees or owners of the goods | 318 |
| | to the carrier before delivery. | 319 |
| War Clauses | (a) No contraband of war shall be shipped. Vessel shall not be re- | 320 |
| | quired, without the consent of Owners, which shall not be unreasonably | 321 |
| | withheld, to enter any port or zone which is involved in a state of war, warlike | 322 |
| | operations, or hostilities, civil strife, insurrection or piracy whether there be a | 323 |
| | declaration of war or not, where vessel, cargo or crew might reasonably be | 324 |
| | expected to be subject to capture, seizure or arrest, or to a hostile act by a | 325 |
| | belligerent power (the term "power" meaning any de jure or de facto authority | 326 |
| | or any supported governmental organization maintaining naval, military or air | 327 |
| | forces). | 328 |
| | (b) If such consent is given by Owners, Charterers will pay the provable | 329 |
| | additional cost of insuring vessel against hull war risks in an amount equal to | 330 |
| | the value under her ordinary hull policy but not exceeding a valuation of | 331 |
| | ........................................ In addition, Owners may purchase and Charterers | 332 |
| | will pay for war risk insurance on ancillary risks such as loss of hire, freight | 333 |
| | disbursements, total loss, blocking and trapping, etc. If such insurance is not | 334 |
| | obtainable commercially or through a government program, vessel shall not | 335 |
| | be required to enter or remain at any such port or zone. | 336 |
| | (c) In the event of the existence of the conditions described in (a) | 337 |
| | subsequent to the date of this Charter, or while vessel is on hire under this | 338 |
| | Charter, Charterers shall, in respect of voyages to any such port or zone | 339 |
| | assume the provable additional cost of wages and insurance properly incurred | 340 |
| | in connection with master, officers and crew as a consequence of such war, | 341 |
| | warlike operations or hostilities. | 342 |
| Ice | 24. The vessel shall not be required to enter or remain in any icebound port | 343 |
| | or area, nor any port or area where lights or lightships have been or are about | 344 |
| | to be withdrawn by reason of ice, nor where there is risk that in the ordinary | 345 |
| | course of things the vessel will not be able on account of ice to safely enter and | 346 |
| | remain in the port or area or to get out after having completed loading or | 347 |
| | discharging, but vessel to follow ice breaker if required but not to force ice. | 348 |
| Navigation | 25. Nothing herein stated is to be construed as a demise of the vessel to the | 349 |
| | Time Charterers. The Owners shall remain responsible for the navigation of the | 350 |
| | vessel, acts of pilots and tug boats, insurance, crew, and all other similar | 351 |

JAMES HOOD LLC        Fax:2038319757        Jan 21 2008 10:42am P014/063

FERROBULK SPL GENOA

**Commissions**
matters, __e as when trading for their own account.
26. A commission of ................... ................... percent is payable by the vessel
and Owners to ...FERROBULK...to be deducted from hire payments...............
on hire earned and paid under this Charter, and also upon any continuation or
extension of this Charter.

**Address**
27. An address commission of .......................3.75...................................... percent
is payable to ......Charterers.............................................
on hire earned and paid under this Charter.

**Rider**
Rider Clauses ....28..to 68.....both...included,................................ as at-
tached hereto are incorporated in this Charter.

352
353
354
355
356
357
358
359
360
361
362
363



FERROBULK

COPY

RIDER TO THE CHARTER PARTY DATED HAMBURG, 4TH JUNE 2002
M/V "DIANA"    —    TIMECHARTER TRIP

**Cl. 28 – Vessel's description:**
Owners warrant that at the day of delivery under this Charter Party the vessel shall conform in all
respects with the description set out hereafter:

a)
m/v 'DIANA'
geared singledecker selftrimming bulkcarrier
built 1997 - flag/crew Cypriot/Polish
DWT 41,176 on 11.45 m ssw
TPI/TPC 122.35/48.17
international GRT/NRT 25206.00/14175.00
LOA/BEAM 186.45/29.98
holds/hatches 5/5
4 x 25 mts crane + 4 grabs (11cbm/6.3 cbm for heavy cargoes)
total grain capacity 1,857,481 cbft
breakdown by holds
1) 342,199  2) 379,668  3) 378,997  4) 381,010  5) 375,607
hatches dims.:  1) 19.72 x 15.36  2-5) 19.89 x 15.36
total strength: 1-5) 19.00 mts/sqm
speed/consumption (in good weather conditions):
ballast  14.5 on 29.5 mt IFO (380 CST) ndas
laden   14.0 on 31.5 mt IFO ndas
in port  3.0 mt IFO gears idle
         4.5 mt IFO gears working
vessel may burn MDO when manoeuvring in ports/canals/narrow places
bunkers quality standards: IFO 380 CST - ISO RMG 35, MDO – ISO DMB
(all 'about')

- owners warrant vessel is a single deck self trimming bulk carrier, suitable grab discharge,
  bridge/engine aft, classed Lloyds 100A1 or equivalent by Polish Register of Shipping, no
  centre line bulk heads or beams, vessel covered by ITF or equivalent, ISM covered, and
  fully suitable and fitted in all respects for Charterers intended trade.

- last 3 cargoes from the last: sulphur, iron ore, iron ore
- last 3 ports of call: Safi or Jorf Lasfar, Gdansk, Bremen
- updated itinerary including last port of call agent contact details:
  ETA Jorf Lasfar or Safi 6th June, (disport not declared yet) - expect best ETC/S 9th June
- Owners full style: Polish Steamship Co., Szczecin as Managing Owners
- port of registry: Limassol
- ex name - n/a
- Class: KM BC ESP HC
- GRT/NRT: 25206/14175
- H/M value + Underwriter: 16 mln usd / Warta
- Master's name: Andrzej Kuzyszyn
- inmar a/b: 321242510
- inmar c: 421242510



**28. (cont.)**
- call sign: P3PY7
- TPC on full DWT: about 48.17

**b)**
Vessel's tank tops are reinforced for grab bucket discharge of bulk cargo and vessel has unobstructed holds.

**c)**
Vessel is strengthened to carry ore cargoes in all holds or in alternate holds and able to carry steel products including steel coils.

**d)**
Vessel is fully equipped with the necessary gear and equipment required for transiting the Panama and Suez Canals.

**e)**
Vessel is equipped with a gyrocompass, radio direction finder, radar and both medium and VHF radio-telephone, all in good working order.

**f)**
Vessel to be able to load a full and complete cargo provided stowage factor allows and depth of water permits.

**g)**
Vessel is a self-trimming single deck bulk carrier without any horizontal obstacles and is fully suitable for grab discharge.

**h)**
Referring to Line 42, during the currency of the Charter Party, Owners to maintain hatch covers, rubber gaskets in good condition and to take all the necessary steps to prevent water leakage onto cargo and damage being caused thereby to cargo.

Hatch covers to be guaranteed watertight during the currency of this Charter Party. Charterers to have the option of carrying out a hydro-test of vessel's hatch covers using vessel's hoses; if any leakage or defection found, same to be repaired at Owners' expenses to Charterers' satisfaction and payment of hire to be suspended for all time lost.

**i)**
Vessel is suitable for grab discharge.

Owners warrant that vessel's holds are clear and unobstructed, no centerline bulkhead, stanchions, posts or any other elements protrude into holds and/or way of hatch openings. Charterers may use forklift and/or bulldozers in cargo holds for cargo handling purposes always in accordance with vessel's tank top strengths.

**j)**
Charterers have the option of providing vessel with a weather routing service provided by WNI Ocean Route with all costs in this respect for Charterers' account.

Owners are to instruct the Master to comply with the reporting procedure of the routing service.

JAMES HOOD LLC       Fax:2098319757    Jan 21 2008 10:43am P019/063
FERROBULK SrL GENOA                                    @009





**28. (cont.)**

In the event of a consistent discrepancy between deck logs and weather service reports, the weather service reports are to be taken as ruling.

It is understood that final routing always in connection with vessel's safety is up to Master's discretion and such discretion should never be unreasonable.

**Cl. 29**

Owners warrant that the vessel has not traded Israel and is not blacklisted by Arab countries.

It is understood that vessel is free from United States bunker restrictions.

**Cl. 30**

Vessel, her equipment and crew to be in possession of the necessary certificates to comply with safety and health regulations and all current requirements and regulations at all ports of call and sea passage during the currency of this Charter. Throughout the period of the Charter, vessel to have on board current valid Panama and Suez Canal measurements certificates and will so comply with applicable requirements.

**Cl. 31**

Owners warrant that during the currency of this Charter, Owners will comply fully with all provisions of the United States Water Quality Improvements Act 1970 and any rules and/or regulations issued thereunder. Should any delay to vessel or extension of the voyage occur from failure to comply with any of the provisions of the said Act, rules and/or regulations or amendments thereto, the vessel to be considered off-hire for the period of such delay or extension. Such certificates also to be on board the vessel on delivery.

Owners warrant that at the date of this Charter and during its currency, the vessel shall have a valid Certificate of Financial Responsibility or such other certificates required by United States of America legislation (Federal and/or state) or United States Government and/or Coast Guard regulations, as may be applicable from time to time, to enable the vessel to call at ports and use the navigable waters of the United States of America. Owners further warrant that vessel at the date of and during the currency of this Charter will comply fully with any law or regulation enforced at any place to which the vessel may be ordered concerning oil pollution or other pollutants.

**Cl. 32**

Vessel to be delivered with valid fumigation, apart same on Charterers' cargo, if any, and deratization certificates and, if these do not cover the whole period of the time charter and fumigation is again necessary due hereto or due to anything for which Owners are responsible, cost of same and detention to be for Owners' account, as well as cost to unload and reload the cargo, if any on board when fumigation to take place.

**Cl. 33**

Vessel shall be in possession of International Cargo Gear Certificate which to be shown to Charterers or their agents if required by them. Any delay there from shall be for Owners' account and Owners to pay all extra expenses incurred incidental to and resulting from such failure, and hire shall cease until vessel is in a position to comply with aforementioned regulation.





## Cl. 34

During any period of delay resulting from non-compliance by the Master, Owners or vessel with Charterers' order or directions in accordance with this Charter Party, and/or vessel lacking proper documentation and/or equipment, vessel is to be off-hire.

## Cl. 35

A joint survey to be held at port of delivery and redelivery in Owners and Charterers' time, unless carried out concurrently with loading, respectively for the purpose of ascertaining the vessel's condition and quantities of the bunker oil and water remaining on board. The expenses of such survey to be shared equally between Owners and Charterers. Delivery/redelivery time to be calculated on GMT basis. Charterers have the right to request Master to test all of vessel's cranes.

## Cl. 36 - Trading Exclusions

Colombia, Nicaragua, Honduras, Costa Rica, Guatemala, Cuba, Belize, Guyana, Suriname, French Guyana, all eastern Caribbean Islands, Haiti and nay other ports presently under United States trade sanctions/restrictions, Israel and its controlled territories, Turkish-occupied Cyprus, Vietnam, North Korea, ex Yugoslavia, Libya (including Gulf of Sidra/Sirte), Russian Pacific ports, Sierra Leone, war and warlike zones, ice and ice-like zones.

## Cl. 37

Intended cargo to be BHF (usually phosrock but possible including DAP/NPK or similar grades), all other cargoes are deemed excluded.

## Cl. 38

Except for the safety of the vessel and cargo under the bad weather situation, should vessel deviate or put back during a voyage contrary to the orders or directions of the Charterers, or pursuant to any provisions in this Charter Party according to which payment of hire shall cease to run, the hire shall be suspended from the time of her deviating or putting back until she is again in the same or at Charterers' option equidistant position from the destination and the voyage resumed there from.

## Cl. 39

In the event of loss of time due to boycott of the vessel by shore labor, or due to government restrictions or ITF recommendations resulting from vessel's flag, or by reason of the terms and conditions on which the members of the crew are employed, or by reason of any trading of this or any other vessel under same ownership or operation or control, payment of hire shall cease for the time thereby lost and the Owners to reimburse the Charterers any expenses caused thereby.

## Cl. 40

Owners to be responsible for nay consequences owing to smuggling by members of ship's crew and payment of hire shall cease for the time thereby lost unless such smuggling caused by Charterers' servants, in which case all responsibility, cost, time to be for Charterers' account.

## Cl. 41

Charterers to have the option of adding any off-hire to this Charter-Party.

If vessel is or is estimated to be off-hire for longer than 35 consecutive days, Charterers still have the option of cancelling this Charter Party provided the vessel has no cargo on board or as soon as the vessel is free of cargo without prejudice to Charterers' rights under this Charter Party.

Such an option to be declared within 48 working hours upon receiving Owners' notification that the above period will be exceeded.

JAMES HOOD LLC    Fax:2038319757    Jan 21 2009 10:44am P022/063
FERRUBULK SFL GENOA    □ 011





**Cl. 42**

Charterers to have the benefit of any return insurance premium receivable by Owners from their underwriters as and when received from underwriters by reason of vessel being in port for an extended period qualifying for such returns.

**Cl. 43**

Cargo claims to be apportioned in accordance with N.Y.P.E. Inter Club Agreement as amended May 1984. Any cargo claims that might occur under this Charter are to be notified to the Charterers within 12 months after redelivery of the vessel.

Charterers are to have the benefit of Owners' PANDI Club cover so far as Club rules permit. Charterers are not to arrange vessel's positioning in consideration of an expected PANDI benefit.

**Cl. 44**

Any damage caused by stevedores during the currency of this Charter Party shall be reported by the Master to the Charterers or their agents in writing within 24 hours of the occurrence or otherwise Charterers will not be responsible. Master shall use his best efforts to obtain written acknowledgement by responsible parties causing damage unless damage should have been made good in the meantime.

Stevedore damages affecting class/seaworthiness/cargo gear worthiness to be repaired on occurrence at Charterers' time and expense and in accordance with class requirements; in case of hidden damages, same to be reported latest on completion of discharge. Charterers can deliver the vessel without repairing any stevedore damages incurred during the currency of the Charter Party provided this does not affect class/seaworthiness/cargo gear worthiness but Charterers undertake to reimburse Owners for actual expenses incurred on stevedore damage items as identified per on- and off-hire survey reports against invoices issued by shipyard or workshop, or Master's statement in case repairs for such damages will be carried out by crew.

Charterers shall pay for stevedore damage whether or not payment has been made by stevedores to the Charterers.

**Cl. 45**

Charterers to pay Owners for communication, victualling and entertainment expenses at the rate of USD 1,200,— per 30 days pro rata.

**Cl. 46**

Bunkers on delivery as onboard, about 650-700 tons IFO and about 50 tons MDO but sufficient to perform Charterers' intended voyage. Bunkers on redelivery to be as onboard.
Prices USD 150,— per metric ton for IFO and USD 230,— per metric ton for MDO.

Charterers to pay for estimated consumption together with 1st hire payment.

**Cl. 47**

Charterers to have the option of holding a inspection of her cranes/grabs at any time without inconvenience to Master and vessel's operation. The Owners or Master giving every facility and assistance to carry this out.





## Cl. 48

In the event of the outbreak of war (whether there be a declaration of war or not) between any two or more of the following countries: The United States of America, the United Kingdom, France, Germany, Russia, the People's Republic of China, or in the event of the nation under whose flag the vessel sails becoming involved in war (whether there be a declaration of war or not), either Owners or Charterers may cancel this Charter. Whereupon Charterers shall redeliver the vessel to Owners in accordance with Clause 4; if she has on board, after discharge thereof at destination or, if debarred under this Clause from reaching or entering at a near open and safe port as directed by Owners, or if she has no cargo on board, at the port at which she then is, or , if at sea, at a near open and safe port as directed by Owners.

In all cases, hire shall continue to be paid in accordance with Clause 4 and except as aforesaid all other provisions of this Charter shall apply until redelivery.

## Cl. 49

Referring to Lines 119, 120 and 121, in order to cover the possibility of any failure to make "punctual and regular payment" due to oversight or negligence or error or omission of Charterers' employees, bankers or agents or otherwise for any reason where there is absence of intention to fail to make payment as set out, Charterers shall be given by Owners three banking working days notice to rectify the failure, and so rectified, the payment shall stand as punctual and regular payment. Unless Owners shall have given such three banking days' notice and such notice period expired without the failure having been rectified, or Charterers having provided a bank guarantee or deposit (at their option), Owners shall not be entitled to withdraw the vessel in accordance with Lines 119-122.

## Cl. 50 - United States Anti-Drug Abuse Act 1989

Owners confirm they have entered into the Sea Carrier Initiative Agreement with the United States Customs Service and that they will use the highest degree of care and diligence to prevent the importation of illegal drugs into the United States.

## Cl. 51

Vessel's holds on delivery to be clean swept/washed down by fresh water  and dried up so as to receive Charterers intended cargoes in all respects, free of salt, rust scale and previous cargo residue to the satisfaction of the relevant surveyors and/or shippers to receive Charterers intended cargoes. If vessel fails to pass hold inspection as above, the vessel should be placed off-hire from time of the rejection until the vessel is fully accepted and any additional expense/damage/time incurred thereby to be for Owners' account.

## Cl. 52

If stevedores, longshoremen or other workmen are not permitted to work due to failure of Owners to comply with Clauses 30 and 34 or because of lack of said certificates, any time so lost shall be treated as off-hire.

JAMES HOOD LLC      Fax:2038319757      Jan 21 2008 10:44am P024/063
FERRUBULK SPL GENOA



## Cl. 53

Hire shall include but not be limited to operations usually performed by the crew unless prohibited by shore regulations such as:

- Opening and/or closing of hatches
- Watchmen in holds for supervision of loading and discharging
- Docking/un-docking/shifting/ballasting and bunkering
- Shape up hatches/holds prior to arrival at loading and/or discharging port/docks/anchorage so that loading and/or discharging operations can commence immediately.

Customs and/or excise duties on ship's stores to be for Owners' account.

## Cl. 54

Charterers have the option to use vessel's cranes including hooking their own grabs into them to perform self-loading and/or self-discharging operation without any charge. Charterers guarantee no damage to vessel's cranes, deck, hatches and cargo holds during hooking and/or unhooking Charterers' grabs. Shore crane drivers to be employed at Charterers' risk and expense.

Gangway watchmen, if used, to be for Owners' account unless compulsory when same to be for Charterers' account. Watchmen for cargo, if any, to be for Charterers' account.

## Cl. 55

For actual time lost due to deficiency or breakdown of cranes, lack of or insufficient power to drive cranes and/or grabs, including strikes or obstruction of the crew or any other cause whatsoever due to vessel's fault, hire to be suspended or reduced on a pro rata basis according to the number of available cranes/grabs and the number of workable holds/hatches.
Owners to employ shore cranes/grabs without any delay if vessel can not rectify the situation within 10 hours in which case vessel remains on-hire.

## Cl. 56

Master to send to Charterers, from each port of call, deck and engine logs covering voyage at sea and port time. Charterers to supply Master with blank forms as required.

## Cl. 57 – Bills of Lading

If required by Charterers, Master is to authorize their Agents or Nominees to sign Bill(s) of Lading on his behalf in strict accordance with the Mate's Receipts.

No through, transhipment or combined transport or liner bills of lading and no waybills are to be issued under this Charter Party. Owners' responsibility ceases upon the cargo passing ship's rail of m/v "DIANA".

## Cl. 58 – Arbitration

All disputes arising out of this contract shall be arbitrated at London and, unless the parties agree forthwith on a single Arbitrator, be referred to the final arbitrament of two Arbitrators carrying on business in London who shall be members of the Baltic Mercantile & Shipping Exchange and engaged in shipping, one to be appointed by each of the parties, with power to such Arbitrators to appoint an Umpire. No award shall be questioned or invalidated on the ground that any of the Arbitrators is not qualified as above, unless objection to his action be taken before the award is made. Any dispute arising hereunder shall be governed by English Law.

JAMES HOOD LLC    Fax:2038319757    Jan 21 2008 10:45am P025/063
FERRUDULA SPL GENUA



## Cl. 59

Should the vessel and/or her Master and/or any of Officers and crew and/or any person travelling on board the vessel be captured/seized/detained and/or requisitioned during the currency of this Charter Party at the suit of any person having or purporting to have any claim against or any interest in the vessel and/or said Master and/or Officers and crew and/or any person travelling on board the vessel, hire under this Charter Party shall not be payable in respect of any period whilst the vessel remains under capture/seizure/detention and/or requisition or remains unemployed as the result of such capture/seizure/detention and/or requisition, or if delayed in any way due to restraint of Master, Officers or crew, etc., and the Owners shall reimburse the Charterers any expenditure which they may incur under this Charter Party and the vessel to be off-hire for any time actually lost. This Clause shall be inoperative should the capture/seizure/detention and/or requisition be caused through any omission of the Charterers.

## Cl. 60 – Asian Gypsy Moth Clause

Owners warrant that the vessel is free from infestation by Asian Gypsy Moth (A.G.M.) or its eggs. Should Owners fail to fulfil such warranty, the Charterers shall be indemnified by Owners for any loss or damage sustained by Charterers and all direct consequences arising from and/or in connection with such failure, including but not limited to any delay, expenses, fines, cost for removal of the moths and their eggs and/or transhipment of the cargo if on board regardless of whether or not the vessel would be banned from entering into or ordered to leave the port(s) because of the said failure.

## Cl. 61 – Protective Clauses

This Charter Party is subject to the following clauses, attached hereto and all of which are also to be included in all Bill(s) of Lading issued hereunder: Clause Paramount, Both-to-Blame Collision Clause, New Jason Clause and Conwartime 1993 Clause.

## Cl. 62

Agents to attend to Owners' minor matters without charging agency fees.

## Cl. 63 – Hamburg Rules

Neither the Charterers nor their Agents shall permit the issuance of any Bill of Lading or other document evidencing a contract of carriage (whether or not signed on behalf of the Owners or on the Charterers' behalf or on behalf of any sub-Charterers), incorporating where not compulsorily applicable, the Hamburg Rules or any other legislation imposing liabilities in excess of Hague or Hague-Visby Rules. The Charterers shall indemnify the Owners against any liability, loss or damage which may result from any breach of the foregoing provisions of this Clause.

## Cl. 64 – Taxes/Dues

Charterers to pay all local/national taxes and/or dues assessed on vessel resulting from Charterers' order, including any taxes and/or dues and/or freight and/or sub-freights (excluding taxes levied by the country of the flags of the vessel and/or Owners' taxes). Extra insurances on cargo due to ship's age, if any, to be for Charterers' account.

## Cl. 65 – Cargo Separation

Vessel to provide hold-wise separations only. Any artificial separations to be done at Charterers' time/expense and risk in respect of any co-mingling and to be to Master's satisfaction.

## Cl. 66 – Deviation Bunkering Clause

Owners have the option to take bunkers at Las Palmas. Vessel, during such bunkering period including the deviation, will be off-hire and any expenses to be for Owners' account.

JAMES HOOD LLC      Fax:2038319757      FERROBULK SPL GENOA      Jan 21 2008 10:45am  P026/063

## NEW JASON CLAUSE

In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequences of which, the carrier is not responsible by statute, contract or otherwise, the goods, shippers, consignees or owner of the goods shall contribute with the carrier in general average to the payment of any sacrifices, losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if such salving ship or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall if required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery.

## NEW BOTH TO BLAME COLLISION CLAUSE

If the liability for any collision in which the vessel is involved while performing this Bill of Lading falls to be determined in accordance with the laws of the United States of America, the following clause shall apply:
« If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the Master, mariner, pilot or servants of the carrier in the navigation or in the management of the ship, the owners of the goods carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-carrying ship or her owners of said goods and set off, recouped or recovered by the other non-carrying ship or her owners as part of their claim against the carrying ship or Carrier ».
The foregoing provisions shall also apply where the Owners, Operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contact.

JAMES HOOD LLC    Fax:2038319757    Jan 21 2008 10:46am P027/063

## GENERAL CLAUSE PARAMOUNT

It is hereby mutually agreed that all Bills of Lading pursuant to this Charter-Party shall bear the following clause:

- "All terms, provisions and conditions of the Rules contained in the International Convention for the Unification of Certain Rules Relating to Bills of Lading dated Brussels 25th August 1924 as amended by the Protocol done in Brussels 23rd February 1968 (commonly known as "Hague-Visby Rules") and by the Protocol done in Brussels 21st December 1979, shall apply to the contract evidenced by this Bill of Lading, but if in the country of shipment or delivery of the cargo any special law has been enacted in order to incorporate the rules of the said Convention and/or of the said Protocols, then all the terms, provisions and conditions of the said Convention and of the said Protocols, with and subject to such modifications and additions, if any, as are imposed by such special law, shall apply. Nothing herein contained shall be deemed to be a surrender by the Carrier of any of its rights or immunities or an increase of any of his responsibilities under the said Rules or Enactments.

The Carrier is to be entitled to the benefit of such privileges, rights, and immunities as are contained in the said Rules or Enactments as if the same were herein specifically set out, and if anything herein contained be inconsistent with the said Rules or Enactments it shall, to the extent of such inconsistency and no further, be null and void."

JAMES HOOD LLC    Fax:2038319757    Jan 21 2008 10:52am  P028/063
12/07  02 VEN 19:20 FAX +39 01" 593947    FERROBULK SPL GENOA                              ☑017



**BIMCO Standard War Risks Clause for Time Charters, 1993 Code Name: "Conwartime 1993"**

(1) For the purpose of this Clause, the words

(a)  "Owners" shall include the shipowners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Vessel, and the Master; and

(b)  "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.

(2) The Vessel, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through, any port, place, area or zone (whether of land or sea), or any waterway or canal, where it appears that the Vessel, her cargo, crew or other persons on board the Vessel, in the reasonable judgement of the Master and/or the Owners, may be, or are likely to be, exposed to War Risks. Should the Vessel be within any such place as aforesaid, which only becomes dangerous, or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.

(3) The Vessel shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels, or is imposed selectively in any way whatsoever against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever, or to proceed to an area where she shall be subject, or is likely to be subject to a belligerents' right of search and/or confiscation.

(4) (a)  The Owners may effect war risks insurance in respect of the Hull and Machinery of the Vessel and their other interests (including, but not limited to, loss of earnings and detention, the crew and their Protection and Indemnity Risks), and the premiums and/or calls therefor shall be for their account.

(b)  If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers' orders, the Vessel is within, or is due to enter and remain within, any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then such premiums and/or calls shall be reimbursed by the Charterers to the Owners at the same time as the next payment of hire is due.

(5) If the crew become liable under the terms of employment to pay to the crew any bonus or additional wages in respect of sailing into an area which is dangerous in the manner defined by the said terms, then such bonus or additional wages shall be reimbursed to the Owners by the Charterers at the same time as the next payment of hire is due.

(6) The Vessel shall have liberty:

(a)  to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery, or in any other way whatsoever, which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government, body or group whatsoever acting with the power to compel compliance with their orders or directions;

(b)  to comply with the order, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

(c)  to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

(d)  to divert and discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;

(e)  to divert and call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions.

(7) If in accordance with their rights under the foregoing provisions of this Clause, the Owners shall refuse to proceed to the loading or discharging ports, or any one or more of them, they shall immediately inform the Charterers.

No cargo shall be discharged at any alternative port without first giving the Charterers notice of the Owners' intention to do so and requesting them to nominate a safe port for such discharge. Failing such nomination by the Charterers within 48 hours of the receipt of such notice and request, the Owners may discharge the cargo at any safe port of their own choice.

(8) If in compliance with any of the provisions of sub-clauses (2) to (7) of this Clause anything is done or not done, such shall not be deemed a deviation, but shall be considered as due fulfilment of this Charterparty.

# EXHIBIT 3

JAMES HOOD LLC    Fax:2038319757    Jan 21 2008 10:52am  P030/063
This derivative work may not be copied without
the permission of the copyright owners.
Code Name: ASBATIME



# FIRST ORIGINAL

## TIME CHARTER

### New York Produce Exchange Form

November 6th, 1913 - Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946; June 12th, 198

| | | |
|---|---|---|
| | THIS CHARTER PARTY, made and concluded in **New York** | 1 |
| | ~~18th~~ day of _July_ ~~19~~ _2002_ | 2 |
| **Owners** | between ~~Messrs. LISA J NAVIGATION COMPANY LLC~~ -- OCEANTRADE CORPORATION | 3 |
| | DISPONENT Owners of | 4 |
| **Description** | the good _Marshall Islands flag_ Motorship /~~Steamship~~ _"LISA J" - see Clause 28_ | 5 |
| **of** | ~~of~~ ~~of~~ ~~tons gross register, and~~ | 6 |
| **Vessel** | ~~tons net register, having engines of~~ | 7 |
| | ~~horsepower and with hull, machinery and equipment in a thoroughly efficient~~ | 8 |
| | ~~state, and classed.~~ ~~of about~~ | 9 |
| | ~~cubic feet grain/bale capacity~~ | 10 |
| | ~~, and about~~ | 11 |
| | ~~long/metric tons deadweight capacity (cargo and~~ | 12 |
| | ~~bunkers, including fresh water and stores not exceeding~~ | 13 |
| | ~~long/metric tons) on a salt water draft of~~ ~~on summer~~ | 14 |
| | ~~freeboard, inclusive of permanent bunkers, which are of the capacity of about~~ | 15 |
| | ~~long/metric tons of~~ | 16 |
| | ~~fuel oil and~~ | 17 |
| | ~~long/metric tons of~~ ~~and~~ | 18 |
| | ~~capable of steaming, fully laden, under good weather conditions about~~ | 19 |
| | ~~knots on a consumption about~~ | 20 |
| | ~~long/metric tons of~~ | 21 |
| | | 22 |
| | now _Vessel's ETA Huelva 21st July 2002/ 23:00 hours L.T._ | 23 |
| | and | 24 |
| **Charterers** | _Messrs. ASIA BULK INC._ | 25 |
| | Charterers of the City of _Singapore_ | 26 |
| | The Owners agree to let and the Charterers agree to hire the vessel from the | 27 |
| **Duration** | time of delivery for ~~about~~ _one Timecharter Trip via safe port(s), safe berth(s), safe anchorage(s),_ | 28 |
| | _always afloat, always within I.W.L. with intended cargo BHF. Duration about 20/25 days without_ | 29 |
| | _guarantee_ | |
| | within below mentioned trading limits. | 30 |
| **Sublet** | Charterers shall have liberty to sublet the vessel for all or any part of the | 31 |
| | time covered by this Charter, but Charterers shall remain responsible for the | 32 |
| | fulfillment of this Charter, _Acceptance of delivery by Charterers shall not constitute any waiver of_ | 33 |
| | _Owners' liabilities hereunder._ | |
| **Delivery** | Vessel shall be placed at the disposal of the Charterers _on arrival first sea pilot station_ | 34 |
| | _CASABLANCA, any time, day or night, Sundays and Holidays included -- Owners shall give not_ | |
| | _less than fully fixed 6 days approximate and 5/3/2 days definite notice_ | |
| | | 35 |
| | | 36 |
| | | 37 |
| | ~~in such dock or at such berth or place (where she may safely lie, always afloat,~~ | 38 |
| | ~~at all times of tide,   except as otherwise provided in Clause 6)  as the Charterers~~ | 39 |
| | ~~may direct. If such dock, berth or place be not available, time shall count as~~ | 40 |
| | ~~provided in Clause 6.~~ Vessel on her delivery shall be _in all respects_ ready to receive _a_ cargo _of_ | 41 |
| | _BHF and_ with | |
| | ~~clean-swept~~ holds _to Independent Surveyor's satisfaction for the intended cargo_ and tight, | 42 |
| | staunch, strong and in every way fitted for ordi- | |

*This Charter Party is a computer generated copy of ASBATIME form, printed under license from the Association of the Baltic & Agents (U.S.A.), inc. using software which is the copyright of DATAWORKS DEVELOPMENT LTD. It is a genuine copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters being clearly highlighted as having been made by the licensee or and user as appropriate and set to the author.*



|  |  |  |
|---|---|---|
|  | nary cargo service, having water ballast and with sufficient power to operate all | 43 |
|  | cargo-handling gear simultaneously (and with full complement of officers and | 44 |
|  | crew for a vessel of her tonnage), to be employed in carrying lawful merchan- | 45 |
| **Dangerous** | dise excluding any goods of a dangerous, injurious, flammable or corrosive | 46 |
| **Cargo** | nature unless carried in accordance with the requirements or recom- | 47 |
|  | mendations of the proper authorities of the state of the vessel's registry and of | 48 |
|  | the states of ports of shipment and discharge and of any intermediate states or | 49 |
|  | ports through whose waters the vessel must pass. Without prejudice to the | 50 |
| **Cargo** | generality of the foregoing, in addition the following are specifically excluded: | 51 |
| **Exclusions** | livestock of any description, arms, ammunition, explosives | 52 |
|  | _See Clause no.37.-_ | 53 |
|  |  | 54 |
|  |  | 55 |
|  |  | 56 |
| **Trading** | The vessel shall be employed in such lawful trades between safe ports and | 57 |
| **Limits** | places within | 58 |
|  | _see clause n° 36_        excluding | 59 |
|  |  | 60 |
|  |  | 61 |
|  |  | 62 |
|  | as the Charterers or their agents shall direct, on the following conditions: | 63 |
| **Owners** | 1.   The Owners shall provide and pay for the insurance of the vessel and | 64 |
| **To** | for all provisions, cabin, deck, engine-room and other necessary stores, in- | 65 |
| **Provide** | cluding boiler water; _also drinking water; lube-oils and garbage disposal_ shall pay for wages, _all_ consular shipping and discharging | 66 |
|  | fees of the crew and _all_ charges for port services pertaining to the crew   _and/or vessel which may be necessitated because of vessel's nationality or flag or otherwise (including all garbage removal or shore watchmen, if any)_; shall | 67 |
|  | maintain vessel's  class and keep her in a  thoroughly efficient state in          _holds_ hull, | 68 |
|  | machinery and equipment for and during the service. | 69 |
| **Charterers** | 2.   The Charterers, while the vessel is on hire, shall provide and pay for all | 70 |
| **To** | the fuel _and diesel_ except as otherwise agreed, port charges, _compulsory_ pilotages, towages, agen- | 71 |
| **Provide** | cies, _except agreed disbursement charges for Owners' matters which to be deducted from hire_ commissions, consular charges (except those pertaining to individual | 72 |
|  | crew members or ~~flag of~~ the vessel _or Owners' nationality_), and all other usual expenses except those | 73 |
|  | stated in Clause 1, but when the vessel puts into a port for causes for which | 74 |
|  | vessel is _and/or Owners are_ responsible, then all such charges  incurred  shall be  paid by the | 75 |
|  | Owners. Fumigations ordered  because of illness  of the  crew shall  be  for | 76 |
|  | Owners' account.        ~~Fumigations ordered because of cargoes carried or ports~~ | 77 |
|  | ~~visited while vessel is employed under this Charter shall be for Charterers'~~ | 78 |
|  | ~~account. All other fumigations shall be for Charterers' account after vessel has~~ | 79 |
|  | ~~been on charter for a continuous period of six months or more.~~ | 80 |
|  | Charterers shall provide necessary dunnage and shifting boards, also | 81 |
|  | any extra fittings requisite for a special trade or unusual cargo, but Owners | 82 |
|  | shall allow them the use of any dunnage and shifting boards already aboard | 83 |
|  | vessel. | 84 |
| **Bunkers** | 3. _See Clause 46_      ~~The Charterers on delivery, and the Owners on redelivery, shall take~~ | 85 |
| **on** | ~~over  and  pay  for  all  fuel  and  diesel oil remaining on board  the vessel  as~~ | 86 |
| **Delivery** | ~~hereunder. The vessel shall be delivered with:~~ | 87 |
| **and** | ~~long/metric² tons of fuel oil at the price of~~                  ~~per ton;~~ | 88 |
| **Redelivery** | ~~tons of diesel oil at the price of~~ | 89 |
|  | ~~per ton. The vessel shall be redelivered with:~~ | 90 |

'This Charter Party is a computer generated copy of ASBATIME form, printed under licence from the Association of Ship Brokers & Agents (U.S.A), Inc. using software which is the  copyright of DATAWORKS DEVELOPMENT LTD It is a precise copy of the original document which can be modified, overwrote or added to only by the striking out of original characters, or the insertion of new characters being clearly  highlighted as having been made by the licensee...

|  |  | 91 |
|---|---|---|
| ~~tons of fuel oil at the price of~~ | ~~per ton;~~ | 91 |
| ~~tons of diesel oil at the price of~~ | ~~per ton.~~ | 92 |
|  |  | 93 |
|  |  | 94 |
| ~~(*Same tons apply throughout this clause)~~ | | 95 |

**Rate**
**of**
**Hire**

4.   The Charterers shall pay for the use and hire of the said vessel at the  96
rate of    *USD 6.450 per day, pro-rata, including overtime*          ~~daily, or~~  97
~~United States Currency~~  98
~~per ton on vessel's total deadweight carrying capacity, including bunkers and~~  99
~~stores, on~~                     ~~summer freeboard, per calendar month,~~  100
commencing on and from the       *day* ~~time~~ of her delivery, as aforesaid, and at and after  101
the same rate for any part of a     *day*     ~~month~~; hire shall continue until the hour of the  102
day of her redelivery in like good order and condition,  *except Charterers to have the option of*  103

**Redelivery**

*redelivering the vessel against paying Owners USD 3,500.-- lumpsum in lieu of holds cleaning,*
ordinary wear and tear

**Areas and**

excepted, to the Owners (unless vessel lost)~~at~~  *on dropping last outward sea pilot one safe port*104
*out of U.S. Gulf/East Coast Mexico Range (intention Coatzacoalcos) in Charterers' option, any*
*time day or night, Sundays and Holidays included*

**Notices**

|  | | 105 |
|---|---|---|
|  | | 106 |
|  | *unless otherwise mutually agreed.* | 107 |

Charterers shall give Owners not less than           *20*          days notice  108
of vessel's expected date of redelivery and probable port *and 7 days approximate and 5/3/2/1 days*09
*definite notice of expected port*

|  | 110 |
|---|---|

**Hire**
**Payment**

5.    Payment of hire shall be made so as to be received by Owners or their  111
designated payee i.e ~~New York~~, i.e *UBS (The Union Bank of Switzerland) - Zurich Head Office,*  112
*Zurich (Switzerland) - Swift address: UBSWCHZH80A - For further credit to: UBS AG, Baarestrasse*
*14, Zug - Switzerland 6301 - Account no.: 273-245603.80Y - For credit to: Sea Ventures*
*Corporation  - Reference: M/V "LISA J"/Asia Bulk - C/P 16.07.2002-*

**and**
**Commencement**

|  | 113 |
|---|---|
|  | 114 |
| *in United States Currency, in funds* | 115 |

available to the Owners on the due date,  ~~semi-monthly~~ *every 15 days* in advance, and for the  116
last *15 days*        ~~half month~~ or part of same the approximate amount of time, ~~and should~~  117
~~same not cover the actual time, hire shall be paid for the balance day by day as~~  118
~~it becomes due, if so required by Owners~~               . Failing the punctual and regular  119
payment of the hire, or on any breach of this Charter, the Owners shall be at  120
~~liberty to withdraw the vessel from the service of the Charterers~~   ~~unless a bank guarantee  and~~ 121
~~deposit is made by Charterer~~ without pre-
judice to any claims they (the Owners) may otherwise have on the Charterers,  *See Clause 49.-*  122
~~Time   shall   count   from   7 A.M.   on   the   working   day   following   that   on~~  123
~~which written notice of readiness has been given to Charterers or their agents~~  124
~~before 4 P.M., but if required by Charterers, they shall have the privilege of~~  125
~~using vessel at once, in which case the vessel will be on hire from the com-~~  126
~~mencement of work.~~  127

**Cash**
**Advances**

Cash for vessel's ordinary disbursements at any port may be advanced,  128
as required by the Captain, by the Charterers or their agents, subject to 21/2  129
percent commission and such advances shall be deducted from the hire. The  130
Charterers, however, shall in no way be responsible for the application of such  131
advances.  132

**Berths**

6.   Vessel shall be loaded and discharged in any       *safe*  dock or at any  *safe*  berth or  133
*safe*  place that Charterers or their agents may direct, provided the vessel can safely  134

"This Charter Party is a computer generated copy of ASBATIME form, printed under license from the Association of ship Brokers & Agency (U.S.A.) inc, using software which is the copyright of DAYAWORKS DEVELOPMENT LTD
it is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters being clearly highlighted so having been made by the insertion
or end user as appropriate and not by this author."

FERRELL

|  | lie always afloat at any time of tide, ~~except at such places where it is customary~~ | 135 |
|  | ~~for similar size vessels to safely lie aground.~~ | 136 |
| **Spaces** | 7.   The whole reach of the vessel's holds, decks, and usual places of | 137 |
| **Available** | loading (not more than she can reasonably and safely stow and carry), also | 138 |
|  | accommodations for supercargo, if carried, shall be at the Charterers' dis- | 139 |
|  | posal, reserving only proper and sufficient space for ship's officers, crew, | 140 |
|  | tackle, apparel, furniture, provisions, stores and fuel. | 141 |
| **Prosecution** | 8.   The Captain shall prosecute his voyages with due despatch, and shall | 142 |
| **of** | render all customary assistance with ship's crew  _- see Clause 53_  and boats. The Captain | 143 |
| **Voyages** | (although appointed by the Owners) shall be under the orders and directions of | 144 |
|  | the Charterers as regards employment and agency; and Charterers are to | 145 |
|  | perform all cargo handling at their expense under the supervision of the | 146 |
|  | Captain, who is to sign the bills of lading for cargo as presented in conformity | 147 |
|  | with mate's or tally clerk's receipts. However, at Charterers' option, the Chart- | 148 |
|  | erers or their agents may sign bills of lading on behalf of the Captain always in | 149 |
| **Bills** | conformity with mate's  ~~or tally clerk's~~  receipts. All bills of lading shall be | 150 |
| **of** | without prejudice to this Charter and the Charterers shall indemnify the Own- | 151 |
| **Lading** | ers against all consequences or liabilities which may arise from any inconsis- | 152 |
|  | tency between this Charter and any bills of lading  ~~or waybills~~  signed by the | 153 |
|  | Charterers or their agents or by the Captain at their request. | 154 |
| **Conduct of** | 9.   If the Charterers shall have reason to be dissatisfied with the conduct of | 155 |
| **Captain** | the Captain or officers, the Owners shall, on receiving particulars of the | 156 |
|  | _written_  complaint, investigate the same, and, if necessary, make a change in the | 157 |
|  | appointments. | 158 |
| **Supercargo** | 10.  The Charterers are entitled to appoint a supercargo, who shall accom- | 159 |
| **and** | pany the vessel and see that voyages are prosecuted with due despatch. He is | 160 |
| **Meals** | to be furnished with free accommodation and same fare as provided for | 161 |
|  | Captain's table, Charterers paying at the rate of   _USD 10.00_                        per day. | 162 |
|  | Owners shall victual pilots and customs officers, and also, when authorized by | 163 |
|  | Charterers or their agents, shall victual tally clerks, stevedore's foreman, etc., | 164 |
|  | Charterers paying at the rate of      _USD 5.00_                 per meal for all such victual- | 165 |
|  | ling. | 166 |
| **Sailing** | 11.  The Charterers shall furnish the Captain from time to time with all | 167 |
| **Orders** | requisite instructions and sailing directions, in writing _the Captain executing the voyages under this_ | 168 |
|  | _C/P with the same due care and diligence as if trading for Owners' account_   and the Captain shall | |
| **and Logs** | keep full and correct deck and engine logs of the voyage or voyages, which are | 169 |
|  | to be patent to the Charterers or their agents, and furnish the Charterers, their | 170 |
|  | agents or supercargo, when required, with a true copy of such deck and engine | 171 |
|  | logs,  _in English_   showing the course of the vessel, distance run and the consumption of | 172 |
|  | fuel. | 173 |
| **Ventilation** | 12.  The Captain shall use diligence in caring        _properly_  for the ventilation of the | 174 |
|  | cargo, _including ventilation or restriction of ventilation as the case may be. Vessel has natural_ 175 |
|  | _ventilation only._ | |
| **Continuation** | ~~13.  The Charterers shall have the option of continuing this Charter for a~~ | 176 |
|  | ~~further period of~~ | 177 |
|  |  | 178 |
| **Laydays/** | 14.  If required by Charterers, time shall not commence before   _00:01 hours, 24th July 2002_ | 179 |
| **Cancelling** |                              and should vessel not have      _delivered_     ~~given written~~ | 180 |
|  | ~~notice of readiness~~ on or before   _31st July 2002 - 24:00 hours_                        ~~but not~~ | 181 |
|  | ~~later than 4 P.M.~~  ── Charterers or their agents shall have the option of cancelling | 182 |
|  | this Charter at any time not later than the day of vessel's readiness. | 183 |

"This Charter Party is a computer generated copy of ASBATIME form, printed under license from the Association of ship Brokers & Agents (U.S.A.), Inc. using software which is the copyright of OATAXWORKS DEVELOPMENT LTD. It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters being clearly highlighted as having been made by the licensee or and uses as appropriate and not by the author."

JAMES HOOD LLC    Fax:2038319757    Jan 21 2008 10:53am P034/063

FIRST ORIGINAL

| | |
|---|---|
| **Off** | 15. In the event of the loss of time from deficiency and/or default  *and/or strike*  of officers  184 |
| **Hire** | or crew or deficiency of stores, fire, breakdown of, or damages to, hull,   185 |
| | machinery or  *deficiency of*  equipment, grounding,  *detention or arrest of the ship,*  detention   186 |
| | by average accidents to ship or |
| | cargo unless resulting from inherent vice, quality or defect of the cargo,   187 |
| | drydocking for the purpose of examination or painting bottom, or by any other   188 |
| | similar cause preventing the full   *use*   working of the vessel, the payment of hire and   189 |
| | overtime, if any, shall cease for the time thereby lost. Should the vessel deviate   190 |
| | or put back during a voyage, contrary to the orders or directions of the   191 |
| | Charterers, for any reason   *whatsoever*   other than accident to the cargo, the hire is to be   192 |
| | suspended from the time of her deviating or putting back until she is again in   193 |
| | the same or equidistant position from the destination and the voyage resumed   194 |
| | therefrom. All fuel used by the vessel while off hire shall be for Owners'   195 |
| | account. In the event of the vessel being driven into port or to anchorage   196 |
| | through stress of weather, trading to shallow harbors or to rivers or ports with   197 |
| | bars, any detention of the vessel and/or expenses resulting from such deten-   198 |
| | tion shall be for the Charterers' account. If upon the voyage the speed be   199 |
| | reduced by defect in, or breakdown of, any part of her hull, machinery or   200 |
| | equipment, the time so lost, and the cost of any extra fuel consumed in   201 |
| | consequence thereof, and all extra expenses shall be deducted from the hire.   202 |
| **Total** | 16. Should the vessel be lost, money paid in advance and not earned   203 |
| **Loss** | (reckoning from the date of loss or being last heard of) shall be returned to the   204 |
| | Charterers at once.   205 |
| **Exceptions** | The act of God, enemies, fire, restraint of princes, rulers and people,   206 |
| | and all dangers and accidents of the seas, rivers, machinery, boilers and steam   207 |
| | navigation, and errors of navigation throughout this Charter, always mutually   208 |
| | excepted.   209 |
| **Liberties** | The vessel shall have the liberty to sail with or without pilots, to tow and   210 |
| | to be towed, to assist vessels in distress, and to deviate for the purpose of   211 |
| | saving life and property.   212 |
| **Arbitration** | 17. Should any dispute arise between Owners and the Charterers, the   213 |
| | matter in dispute shall be referred to   *arbitration in New York - See Clause 59*  ~~three persons at~~   214 |
| | ~~New York, one to be~~ |
| | ~~appointed by each of the parties hereto, and the third by the two so chosen;~~ ————   215 |
| | ~~their decision, or that of any two of them, shall be final and for the purpose of~~ ————   216 |
| | ~~enforcing any award this agreement may be made a rule of the Court.~~ ————The   217 |
| | arbitrators shall be commercial men conversant with shipping matters.   218 |
| **Liens** | 18. The Owners shall have a lien upon all cargoes and all sub-freights  *and sub-hires*  for   219 |
| | any amounts due under this Charter, including general average contributions,   220 |
| | and the Charterers shall have a lien on the ship for all monies paid in advance   221 |
| | and not earned, and any overpaid hire or excess deposit to be returned at once.   222 |
| | Charterers will not suffer, nor permit to be continued, any lien or encumbrance   223 |
| | incurred by them or their agents, which might have priority over the title and   224 |
| | interest of the Owners in the vessel.   225 |
| **Salvage** | 19. All derelicts and salvage shall be for Owners' and Charterers' equal   226 |
| | benefit after deducting Owners' and Charterers' expenses and crew's propor-   227 |
| | tion.   228 |
| **General** | General average shall be adjusted, according to York - Antwerp Rules   229 |
| **Average** | 1974, *amended 1990, or any subsequent amendment thereof current at the time of the*   230 |
| | *casualty in London.*   ~~at such port or place in the United States as may be selected by the~~ |
| | ~~Owners and as to matters not provided for by these Rules, according to the~~ ————   231 |
| | ~~laws and usage at the port of New York~~ ————. In such adjustment disbursements in   232 |
| | foreign currencies shall be exchanged into   *the same currency as hire payable under this*   233 |

*This Charter Party is a computer generated copy of ASBATIME form, printed under license from the Association of ship Brokers & Agents (U.S.A), Inc. using software which is the copyright of DATAWORKS DEVELOPMENT LTD. It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters being clearly highlighted as having been made by the licensee or end user as appropriate and not by the author.*



# FIRST ORIGINAL

Charter Party United States money at the rate

prevailing on the dates made and allowances for damage to cargo claimed in — 234
foreign currency shall be converted at the rate prevailing on the last day of — 235
discharge at the port or place of final discharge of such damaged cargo from — 236
the ship.    Average agreement or bond and such additional security, as may be — 237
required by the Owners, must be furnished before delivery of the goods. Such — 238
cash deposit as the Owners or their agents may deem sufficient as additional — 239
security for the contribution of the goods and for any salvage and special — 240
charges thereon, shall, if required, be made by the goods, shippers, consign- — 241
ees or owners of the goods to the Owners before delivery. Such deposit shall, — 242
at the option of the Owners, be payable in United States money and remitted to — 243
the adjuster. When so remitted the deposit shall be held in a special account at — 244
the place of adjustment in the name of the adjuster pending settlement of the — 245
general average and refunds or credit balances, if any, shall be paid in United — 246
States money. — 247

**York-**
**Antwerp**    Charterers shall procure that all bills of lading issued during the cur- — 248
**Rules**    rency of the Charter will contain a provision to the effect that general average — 249
shall be adjusted according to York-Antwerp Rules 1974    *amended 1990, or any subsequent* — 250
*amendments* and will include the
"New Jason Clause" as per Clause 23.    *Hire not to contribute to General Average.* — 251

**Drydocking**    20.  The vessel was last drydocked _____ . The — 252
Owners shall have the option to place the vessel in drydock during the cur- — 253
rency of this Charter at a convenient time and place, to be mutually agreed — 254
upon between Owners and Charterers, for bottom cleaning and painting — 255
and/or repair as required by class or dictated by circumstances. Payment of — 256
hire shall be suspended upon deviation from Charterers' service until vessel is — 257
again placed at Charterers' disposal at a point not less favorable to Charterers — 258
than when the hire was suspended _____ — 259
_____ — 260
_____ — 261

**Cargo**    21.  Owners shall maintain the cargo-handling gear of the ship which is as — 262
**Gear**    follows: *see Clause 28* — 263
_____ — 264
_____ — 265

providing gear (for all derricks or cranes) capable of lifting capacity as de- — 266
scribed. Owners shall also provide on the vessel for night work    *adequate electric* lights as on — 267
board, *to enable all hatches to be worked safely and simultaneously*    but all additional lights — 268
over these on board shall be at Charterers'
expense. The Charterers shall have the use of any gear on board the vessel. If — 269
required by Charterers, the vessel shall work night and day and all cargo- — 270
handling gear shall be at Charterers' disposal during loading and discharging. — 271

**Stevedore**    In the event of disabled cargo-handling gear, or insufficient power to operate — 272
**Stand-by**    the same, the vessel is to be considered off hire to the extent that time is — 273
actually lost to the Charterers and Owners to pay stevedore stand-by charges *upto non-cancelled* — 274
*shift/gang per breakdown and time if any*
occasioned thereby. If required by the Charterers, the Owners are to bear the — 275
cost of hiring shore gear in lieu thereof.    *Vessel to remain on hire during such periods.* — 276

**Crew**    22.  In lieu of any overtime payments to officers and crew for work ordered — 277
**Overtime**    by Charterers or their agents, Charterers shall pay Owners $ _____ — 278
per month or pro rata. — 279

**Clauses**    23.  The following clause is to be included in all bills of lading issued — 280
**Paramount**    hereunder: — 281
    This bill of lading shall have effect subject to the provisions of the — 282

"This Charter Party is a computer generated copy of ASBATIME form, printed under license from the Association of ship Brokers & Agents (U.S.A), Inc, using software which is the copyright of DATAWorld® DEVELOPMENT LTD it is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters being clearly highlighted as having been made by the licensee or and later as appropriate and not by the author."

JAMES HOOD LLC    Fax:2038319757    Jan 21 2008 10:54am P036/063

FIRST ORIGINAL

Carriage of Goods by Sea Act of the United States, the Hague Rules, or the — 283
Hague-Visby Rules, as applicable, or such other similar national legislation as — 284
may mandatorily apply by virtue of origin or destination of the bills of lading, — 285
which shall be deemed to be incorporated herein and nothing herein con- — 286
tained shall be deemed a surrender by the carrier of any of its rights or — 287
immunities or an increase of any of its responsibilities or liabilities under said — 288
applicable Act. If any term of this bill of lading be repugnant to said applicable — 289
Act to any extent, such term shall be void to that extent, but no further. — 290

This Charter is subject to the following clauses all of which are to be — 291
included in all bills of lading issued hereunder. — 292

**New Both-to-Blame Collision Clause**

If the ship comes into collision with another ship as a result of the — 293
negligence of the other ship and any act, neglect or default of the master, — 294
mariner, pilot or the servants of the carrier in the navigation or in the manage- — 295
ment of the ship, the owners of the goods carried hereunder will indemnify the — 296
carrier against all loss or liability to the other or non-carrying ship or her — 297
owners insofar as such loss or liability represents loss of, or damage to, or any — 298
claim whatsoever of the owners of said goods, paid or payable by the other or — 299
non-carrying ship or her owners to the owners of said goods and set-off, — 300
recouped or recovered by the other or non-carrying ship or her owners as part — 301
of their claim against the carrying ship or carrier. — 302

The foregoing provisions shall also apply where the owners, operators — 303
or those in charge of any ships or objects other than, or in addition to, the — 304
colliding ships or objects are at fault in respect to a collision or contact. — 305

**New Jason Clause**

In the event of accident, danger, damage or disaster before or after — 306
commencement of the voyage resulting from any cause whatsoever, whether — 307
due to negligence or not, for which, or for the consequences of which, the — 308
carrier is not responsible, by statute, contract, or otherwise, the goods, ship- — 309
pers, consignees, or owners of the goods shall contribute with the carrier in — 310
general average to the payment of any sacrifices, losses, or expenses of a — 311
general average nature that may be made or incurred, and shall pay salvage — 312
and special charges incurred in respect of the goods. — 313

If a salving ship is owned or operated by the carrier, salvage shall be — 314
paid for as fully as if salving ship or ships belonged to strangers. Such deposit — 315
as the carrier or his agents may deem sufficient to cover the estimated con- — 316
tribution of the goods and any salvage and special charges thereon shall, if — 317
required, be made by the goods, shippers, consignees or owners of the goods — 318
to the carrier before delivery. — 319

**War Clauses**

(a) No contraband of war shall be shipped. Vessel shall not be re- — 320
quired, without the consent of Owners, which shall not be unreasonably — 321
withheld, to enter any port or zone which is involved in a state of war, warlike — 322
operations, or hostilities, civil strife, insurrection or piracy whether there be a — 323
declaration of war or not, where vessel, cargo or crew might reasonably be — 324
expected to be subject to capture, seizure or arrest, or to a hostile act by a — 325
belligerent power (the term "power" meaning any de jure or de facto authority — 326
or any purported governmental organization maintaining naval, military or air — 327
forces). — 328

(b) If such consent is given by Owners, Charterers will pay the provable — 329
additional cost of insuring vessel against hull war risks in an amount equal to — 330
the value under her ordinary hull policy but not exceeding a valuation of — 331
 . In addition, Owners may purchase and Charterers — 332
will pay for war risk insurance on ancillary risks such as loss of hire, freight — 333
disbursements, total loss, blocking and trapping, etc. If such insurance is not — 334
obtainable commercially or through a government program, vessel shall not — 335

*This Charter Party is a computer generated copy of ASBATIME form, printed under license from the Association of Ship Brokers & Agents (U.S.A.), Inc. using software which is the copyright of DATAWORKS DEVELOPMENT LTD. It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters being clearly highlighted all having been made by the licensee

FERROBULK

~~be required to enter or remain at any such port or zone.~~ 336
~~(e) In the event of the existence of the conditions described in (a)~~ 337
~~subsequent to the date of this Charter, or while vessel is on hire under this~~ 338
~~Charter, Charterers shall, in respect of voyages to any such port or zone~~ 339
~~assume the provable additional cost of wages and insurance properly incurred~~ 340
~~in connection with master, officers and crew as a consequence of such war,~~ 341
~~warlike operations or hostilities.~~ 342

**Ice**          24. The vessel shall not be required to enter or remain in any icebound port 343
or area, nor any port or area where lights or lightships have been or are about 344
to be withdrawn by reason of ice, nor where there is risk that in the ordinary 345
course of things the vessel will not be able on account of ice to safely enter and 346
remain in the port or area or to get out after having completed loading or 347
discharging *but Vessel to follow ice breaker if required but not to force ice* . 348

**Navigation**          25. Nothing herein stated is to be construed as a demise of the vessel to the 349
Time Charterers. The Owners shall remain responsible for the navigation of the 350
vessel, acts of pilots and tug boats, insurance, crew, and all other similar 351
matters, same as when trading for their own account. 352

**Commissions**          26. A commission of *1.25*                                    percent is payable by the vessel 353
and Owners to *Ferrobulk to be deducted from hire payment(s)* & 1.25 to SST-NY 354
                                                                                355
on hire earned and paid under this Charter, and also upon any continuation or 356
extension of this Charter. 357

**Address**          27. An address commission of *3.75*                                    percent 358
is payable to *Charterers* 359
                                                                                360
on hire earned and paid under this Charter. 361

**Rider**          Rider Clauses *28 to 68, both included,* as at- 362
tached hereto are incorporated in this Charter. 363

PER AUTHORITY OF
OCEANTRADE CORPORATION
BY BULKAMERICA CORPORATION

AS AGENTS ONLY

*This Charter Party is a computer generated copy of ASBATIME form, printed under license from the Association of ship Brokers & Agents (U.S.A), Inc. using software which is the copyright of DATAWORKS DEVELOPMENT LTD. It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters being clearly highlighted so having been made by the licensee ...*

JAMES HOOD LLC _ _ _ Fax:2038319757 _ _ _ _ _ Jan 21 2008 10:55am P039/063



## RIDER TO THE CHARTER PARTY DATED NEW YORK, 16TH JULY 2002

### M/V "LISA J" – TIME CHARTER TRIP

**Clause 28 – Vessel's description:**
Owners warrant that at the day of delivery under this Charter Party the vessel shall conform in all respects with the description set out hereafter:

**M/V "LISA J"**
Ex names       : "PACIFIC SKY", "MANILA PROGRESS", "SANKO POINSETTIA"
Single decker, Bulk Carrier, Marshall Islands Flag, Built March 1985
Summer DWAT 40.461 MT on 11.020 m summer salt water draft
TPC on full summer salt water  : 47.69 MT
LOA/ Beam                      : 184.80 m/ 30.50 m
GRT/ NRT                       : 23279/ 13356
Grain/ Bale                    : 50,748 CBM/ 50,039 CBM
Cubic Breakdown per hold (all CBM)

| Hold | Grain | Bale |
|---|---|---|
| 1 | 8,570 | 8,379 |
| 2 | 11,125 | 10,991 |
| 3 | 10,301 | 10,161 |
| 4 | 11,122 | 10,987 |
| 5 | 9,630 | 9,521 |

5 Holds/Hatches - Hatch cover type: McGregor fore and aft opening
Hatch dimensions: 1)15.2 x 15.0 m; 2-5) 9.2 x 15.0 m

4 x 25 Ton Cranes

Speed and consumption:
Laden  about 13.0 knots on about 23 MT IFO + about 1.5 MT MDO
Ballast about 13.5 knots on about 23 MT IFO + about 1.5 MT MDO

In Port:
Gear Idle        : about 1.4 MT MDO per day
Gear Working : about   2 MT MDO per day

All details "about".

– Owners to confirm vessel can discharge basis the following restrictions basis arrival fully laden.

- Height of the hoppers themselves (from deck to top edge of hopper)  2 of them about 20' - 1 of them about 25'

- Waterline to top of berth: At high water - 8' / At low water - 12'.

- Distance from edge pier to center of hopper about 12'.

JAMES HOOD LLC     Fax:2038319757          Jan 21 2008 10:56am P039/063



**Clause 28 – Vessel's description: (cont.)**

Grabs: None

- Crane outreach          - 6.2 m
- Pedestal height from deck - 6.2 m
- Deck to bottom of jib in horizontal position - 8.2 m

- Owners warrant vessel is a single deck, self trimming, bulk carrier, suitable for grab discharge, bridge/engine aft, classed Lloyds 100A1 or equivalent with classification society being full member of I.A.C.S., no centre line bulk heads or beams, vessel covered by I.T.F. or equivalent, I.S.M. covered, and fully suitable and fitted in all respects for Charterers intended trade.

- Last 3 cargoes from the last : coal/ copper concentrates/ grain
- Last 3 ports of call          : Huelva (will be there 21)/ Maputo/ Tuticorin/ Dahej
- Updated itinerary including last port of call, agent contact details:
  Vessel's ETA Huelva 21st July 2002/ 23:00 hours L.T.

Agents: Ership
Marina 26, Apdo. 306 - 21001 Huelva
Contact      : Manuel Viegas
Phone       : 34 959 21 51 01 - Fax: 34 959 26 10 05 - Telex 75534 ATM H
A.O.H.      : 34 959 25 67 30

- Owners' full style    : Lisa J Navigation Company LLC.
- Port of Registry      : Majuro
- Ex Name              : Pacific Sky
- Class                : N.K.
- GRT/NRT             : 23279/ 13356
- Hull/Machinery Value + Underwriter 100% Norwegian Market through Henschien $ 9 M
- Master's Name        : Morandarte
- Vessel's Telex no. (s): SAT C: 453816060/ SAT A: 1554521
- Vessel's Phone no. (s): 1554521
- Vessel's Fax no.   (s): 1554521
- Vessel's e-mail no. (s): 453816060@c.station12.com   <mailto:453816060@c.station12.com>
- Call Sign            : V7BV4
- TPC on full DWT     : 47.69 MT
- P. & I. Club         : Gard

All details "about".


**Clause 29**
Owners warrant that the vessel has not traded Israel and is not blacklisted by Arab countries.

It is understood that vessel is free from United States bunker restrictions.

JAMES HOOD LLC    Fax:2038319757    Jan 21 2008 10:56am P040/063



**Clause 30**
Vessel, her equipment and crew to be in possession of the necessary certificates to comply with safety and health regulations and all current requirements and regulations at all ports of call and sea passage during the currency of this Charter. Throughout the period of the Charter, vessel to have on board current valid Panama and Suez Canal measurements certificates and will so comply with applicable requirements.

**Clause 31**
Owners warrant that during the currency of this Charter, Owners will comply fully with all provisions of the United States Water Quality Improvements Act 1970 and any rules and/or regulations issued there under. Should any delay to vessel or extension of the voyage occur from failure to comply with any of the provisions of the said Act, rules and/or regulations or amendments thereto, the vessel to be considered off-hire for the period of such delay or extension. Such certificates also to be on board the vessel on delivery.

Owners warrant that at the date of this Charter and during its currency, the vessel shall have a valid Certificate of Financial Responsibility or such other certificates required by United States of America legislation (Federal and/or state) or United States Government and/or Coast Guard regulations, as may be applicable from time to time, to enable the vessel to call at ports and use the navigable waters of the United States of America. Owners further warrant that vessel at the date of and during the currency of this Charter will comply fully with any law or regulation enforced at any place to which the vessel may be ordered concerning oil pollution or other pollutants.

**Clause 32**
Vessel to be delivered with valid fumigation, apart same on Charterers' cargo, if any, and deratization certificates and, if these do not cover the whole period of the time charter and fumigation is again necessary due hereto or due to anything for which Owners are responsible, cost of same and detention to be for Owners' account, as well as cost to unload and reload the cargo, if any on board when fumigation to take place.

**Clause 33**
Vessel shall be in possession of International Cargo Gear Certificate which to be shown to Charterers or their agents if required by them. Any delay there from shall be for Owners' account and Owners to pay all extra expenses incurred incidental to and resulting from such failure, and hire shall cease until vessel is in a position to comply with aforementioned regulation.

**Clause 34**
During any period of delay resulting from non-compliance by the Master, Owners or vessel with Charterers' order or directions in accordance with this Charter Party, and/or vessel lacking proper documentation and/or equipment, vessel is to be off-hire.

**Clause 35**
A joint survey to be held at port of delivery and redelivery in Owners and Charterers' time, unless carried out concurrently with loading, respectively for the purpose of ascertaining the vessel's condition and quantities of the bunker oil and water remaining on board. The expenses of such survey to be shared equally between Owners and Charterers. Delivery/redelivery time to be calculated on GMT basis. Charterers have the right to request Master to test all of vessel's cranes.

JAMES HOOD LLC    Fax:2038319757    Jan 21 2008 11:07am P005

FIRST ORIGINAL



**Clause 36 - Trading Exclusions**
Colombia, Nicaragua, Honduras, Costa Rica, Guatemala, Cuba, Belize, Guyana, Suriname, French Guyana, all eastern Caribbean Islands, Haiti and nay other ports presently under United States trade sanctions/restrictions, Israel and its controlled territories, Turkish-occupied Cyprus, Vietnam, North Korea, ex Yugoslavia, Libya (including Gulf of Sidra/Sirte), Russian Pacific ports, Sierra Leone, war and warlike zones, ice and ice-like zones.

**Clause 37**
Intended cargo to be BHF (usually phosrock but possible including DAP/NPK or similar grades), all other cargoes are deemed excluded.

**Clause 38**
Except for the safety of the vessel and cargo under the bad weather situation, should vessel deviate or put back during a voyage contrary to the orders or directions of the Charterers, or pursuant to any provisions in this Charter Party according to which payment of hire shall cease to run, the hire shall be suspended from the time of her deviating or putting back until she is again in the same or at Charterers' option equidistant position from the destination and the voyage resumed there from.

**Clause 39**
In the event of loss of time due to boycott of the vessel by shore labour, or due to government restrictions or ITF recommendations resulting from vessel's flag, or by reason of the terms and conditions on which the members of the crew are employed, or by reason of any trading of this or any other vessel under same ownership or operation or control, payment of hire shall cease for the time thereby lost and the Owners to reimburse the Charterers any expenses caused thereby.

**Clause 40**
Owners to be responsible for nay consequences owing to smuggling by members of ship's crew and payment of hire shall cease for the time thereby lost unless such smuggling caused by Charterers' servants, in which case all responsibility, cost, time to be for Charterers' account.

**Clause 41**
Charterers to have the option of adding any off-hire to this Charter-Party. If vessel is or is estimated to be off-hire for longer than 35 consecutive days, Charterers still have the option of cancelling this Charter Party provided the vessel has no cargo on board or as soon as the vessel is free of cargo without prejudice to Charterers' rights under this Charter Party. Such an option to be declared within 48 working hours upon receiving Owners' notification that the above period will be exceeded.

**Clause 42**
Charterers to have the benefit of any return insurance premium receivable by Owners from their underwriters as and when received from underwriters by reason of vessel being in port for an extended period qualifying for such returns.

**Clause 43**
Cargo claims to be apportioned in accordance with N.Y.P.E. Inter Club Agreement as amended May 1984 and any amendments thereto. Any cargo claims that might occur under this Charter are to be notified to the Charterers within 12 months after redelivery of the vessel. Charterers are to have the benefit of Owners' P. and I. Club cover so far as Club rules permit. Charterers are not to arrange vessel's positioning in consideration of an expected P. and I. benefit.

JAMES HOOD LLC    Fax:2038319757    Jan 21 2008 11:07am P006/027
FIRST ORIGINAL



### Clause 44

Stevedores, although appointed and paid for by the respective voyage, Charterers under this Charter Party to work under the supervision of Master. Should any damage be caused to the vessel or her fittings by the stevedores, the Master has to try to let stevedores repair such damage and try to settle the matter directly with them.

The Charterers or Stevedores shall not be responsible for any damage caused by stevedores to the vessel unless the Master endeavours to obtain written acknowledgement of the damage from the concerned stevedores and immediately notifies the Charterers or their agents of such damage within 24 hours from occurrence or latest prior to departure from the port of occurrence. In case refusal of stevedores to acknowledge responsibility an independent surveyor to be appointed and cost to be paid by the party found to be wrong.

The Charterers or Stevedores shall have the liberty to redeliver the vessel without repairing the damage for which the Charterers or Stevedores are responsible, as long as the same do not affect the vessel's seaworthiness and normal working capacity, but the Charterers or Stevedores undertake to reimburse costs of repair against the production of repair bills by repairers or dockyard unless otherwise agreed. Additional time for repair works, if any, to be mutually negotiated but ultimately to be for Charterers' or Stevedores' account. Any damages affecting seaworthiness or normal working capability and/or class should be repaired immediately, in order for the vessel to be able to perform, at Charterers' or Stevedores' time and expense.

### Clause 45

Charterers to pay Owners for communication, victualling and entertainment expenses at the rate of USD 1,000,-- per 30 days pro rata.

### Clause 46

Bunkers on delivery as on board, about 500-600 Metric Tons IFO and about 40-60 Metric Tons MDO. Bunkers on redelivery to be as on board.

Prices USD 150,-- per Metric Ton for IFO and USD 250,-- per Metric Ton for MDO.

Charterers to pay for estimated consumption together with 1st hire payment. Any discrepancies, if any, will be settled on redelivery.

### Clause 47

Charterers to have the option of holding an inspection of her cranes at any time without inconvenience to Master and vessel's operation. The Owners or Master giving every facility and assistance to carry this out.

Any time lost due to deficiency of vessel's cranes to count as off-hire pro-rata according to the total number of working hatches and Owners to employ shore cranes without any delay if vessel can not rectify the situation within 10 hours.



JAMES HOOD LLC        Fax:2039319757        Jan 21 2008 11:07am  P007/027
FIRST ORIGINAL

**Clause 48**
In the event of the outbreak of war (whether there be a declaration of war or not) between any two or more of the following countries: The United States of America, the United Kingdom, France, Germany, Russia, the People's Republic of China, or in the event of the nation under whose flag the vessel sails becoming involved in war (whether there be a declaration of war or not), either Owners or Charterers may cancel this Charter. Whereupon Charterers shall redeliver the vessel to Owners in accordance with Clause 4; if she has on board, after discharge thereof at destination or, if debarred under this Clause from reaching or entering at a near open and safe port as directed by Owners, or if she has no cargo on board, at the port at which she then is, or, if at sea, at a near open and safe port as directed by Owners.

In all cases, hire shall continue to be paid in accordance with Clause 4 and except as aforesaid all other provisions of this Charter shall apply until redelivery.

**Clause 49**
Referring to Lines 119, 120 and 121, in order to cover the possibility of any failure to make "punctual and regular payment" due to oversight or negligence or error or omission of Charterers' employees, bankers or agents or otherwise for any reason where there is absence of intention to fail to make payment as set out, Charterers shall be given by Owners three banking working days notice to rectify the failure, and so rectified, the payment shall stand as punctual and regular payment. Unless Owners shall have given such three banking days' notice and such notice period expired without the failure having been rectified, or Charterers having provided a bank guarantee or deposit (at their option), Owners shall not be entitled to withdraw the vessel in accordance with Lines 119-122.

**Clause 50 - United States Anti-Drug Abuse Act 1989**
Owners confirm they have entered into the Sea Carrier Initiative Agreement with the United States Customs Service and that they will use the highest degree of care and diligence to prevent the importation of illegal drugs into the United States.

**Clause 51**
Vessel's holds on delivery to be clean swept/washed down by fresh water  and dried up so as to receive Charterers intended cargoes in all respects, free of salt, rust scale and previous cargo residue to the satisfaction of the relevant surveyors and/or shippers to receive Charterers intended cargoes. If vessel fails to pass hold inspection as above, the vessel should be placed off-hire from time of the rejection until the vessel is fully accepted and any additional expense/damage/time incurred thereby to be for Owners' account.

**Clause 52**
If stevedores, longshoremen or other workmen are not permitted to work due to failure of Owners to comply with Clauses 30 and 34 or because of lack of said certificates, any time so lost shall be treated as off-hire.

JAMES HOOD LLC    Fax:2038319757    Jan 21 2008 11:07am P008/027   FIRST ORIGINAL



**Clause 53**
Hire shall include but not be limited to operations usually performed by the crew unless prohibited by shore regulations such as:
- Opening and/or closing of hatches
- Watchmen in holds for supervision of loading and discharging
- Docking/un-docking/shifting/ballasting and bunkering
- Shape up hatches/holds prior to arrival at loading and/or discharging port/docks/anchorage so that loading and/or discharging operations can commence immediately.

Customs and/or excise duties on ship's stores to be for Owners' account.

**Clause 54**
Charterers have the option to use vessel's cranes including hooking their grabs (which are mechanical 12 CBM grabs) into them to perform self-loading and/or self-discharging operation without any charge. Charterers guarantee no damage to vessel's cranes, deck, hatches and cargo holds during hooking and/or unhooking Charterers' grabs. Shore crane drivers to be employed at Charterers' risk and expense.

Gangway watchmen, if used, to be for Owners' account unless compulsory when same to be for Charterers' account. Watchmen for cargo, if any, to be for Charterers' account.

**Clause 55**
For actual time lost due to deficiency or breakdown of cranes, lack of or insufficient power to drive cranes and/or grabs, including strikes or obstruction of the crew or any other cause whatsoever due to vessel's fault, hire to be suspended or reduced on a pro rata basis according to the number of available cranes/grabs and the number of workable holds/hatches, unless caused by default or negligence of Charterers/ Charterers' representative/ Charterers' employees.

Owners to employ shore cranes/grabs without any delay if vessel can not rectify the situation within 10 hours in which case vessel remains on-hire.

**Clause 56**
Master to send to Charterers, from each port of call, deck and engine logs covering voyage at sea and port time. Charterers to supply Master with blank forms as required.

**Clause 57 – Bills of Lading**
Charterers or their agents are herewith authorized to issue and sign Bills of Lading on Master's behalf in accordance with Mate's receipts without prejudice to this Charter Party. Charterers or their agents are only authorized to issue and sign delivery orders on Master's behalf in exchange for full set of original Bills of Lading, and they are also authorised to stamp Bills of Lading whenever required FREIGHT PREPAID. Owners hereby undertake that the Master shall at all times permit the cargo to be discharged in accordance with Charterers' instructions. In particular, he shall permit discharge of the cargo into barges, warehouse or store, if instructed by Charterers, notwithstanding that original Bills of Lading for that cargo may not have arrived at the discharging port. In case of any discharging port where the cargo is customary can be placed into the custody of customs and/or agents, Charterers or receivers shall keep the cargo in such custody. In consideration of above Charterers agree to indemnify Owners and hold them harmless (by L.O.I. in Owners' wording required by Owners' P. and I. Club and signed by Charterers only) in respect of any claims which they may sustain by reason of the above mentioned operation.



**Clause 58 – Arbitration**

All disputes arising out of this contract shall be arbitrated at New York and, unless the parties agree forthwith on a single Arbitrator, be referred to the final arbitrament of two Arbitrators carrying on business in London who shall be members of the Baltic Mercantile & Shipping Exchange and engaged in shipping, one to be appointed by each of the parties, with power to such Arbitrators to appoint an Umpire. No award shall be questioned or invalidated on the ground that any of the Arbitrators is not qualified as above, unless objection to his action be taken before the award is made. Any dispute arising hereunder shall be governed by English Law.

Should the total amount of the claim not exceed USD 50,000, the matter to be settled according to the LMAA Small Claims Procedure in its most recent form.

**Clause 59**

Should the vessel and/or her Master and/or any of Officers and crew and/or any person travelling on board the vessel be captured/seized/detained and/or requisitioned during the currency of this Charter Party at the suit of any person having or purporting to have any claim against or any interest in the vessel and/or said Master and/or Officers and crew and/or any person travelling on board the vessel, hire under this Charter Party shall not be payable in respect of any period whilst the vessel remains under capture/seizure/detention and/or requisition or remains unemployed as the result of such capture/seizure/detention and/or requisition, or if delayed in any way due to restraint of Master, Officers or crew, etc., and the Owners shall reimburse the Charterers any expenditure which they may incur under this Charter Party and the vessel to be off-hire for any time actually lost. This Clause shall be inoperative should the capture/seizure/detention and/or requisition be caused through any omission of the Charterers.

**Clause 60 – Asian Gypsy Moth Clause**

Owners warrant that the vessel is free from infestation by Asian Gypsy Moth (A.G.M.) or its eggs. Should Owners fail to fulfil such warranty, the Charterers shall be indemnified by Owners for any loss or damage sustained by Charterers and all direct consequences arising from and/or in connection with such failure, including but not limited to any delay, expenses, fines, cost for removal of the moths and their eggs and/or transhipment of the cargo if on board regardless of whether or not the vessel would be banned from entering into or ordered to leave the port(s) because of the said failure.

**Clause 61 – Protective Clauses**

This Charter Party is subject to the following clauses, attached hereto and all of which are also to be included in all Bill(s) of Lading issued hereunder: Clause Paramount, Both-to-Blame Collision Clause, New Jason Clause and Conwartime 1993 Clause.

**Clause 62**

Agents to attend to Owners' minor matters without charging agency fees.

**Clause 63 – Hamburg Rules**

Neither the Charterers nor their Agents shall permit the issuance of any Bill of Lading or other document evidencing a contract of carriage (whether or not signed on behalf of the Owners or on the Charterers' behalf or on behalf of any sub-Charterers), incorporating where not compulsorily applicable, the Hamburg Rules or any other legislation imposing liabilities in excess of Hague or Hague-Visby Rules. The Charterers shall indemnify the Owners against any liability, loss or damage which may result from any breach of the foregoing provisions of this Clause.


JAMES HOOD LLC    Fax:2038319757    Jan 21 2008 11:08am  P010/027

### Clause 64 – Taxes/Dues
Charterers to pay all local/national taxes and/or dues assessed on vessel resulting from Charterers' order, including any taxes and/or dues and/or freight and/or sub-freights (excluding taxes levied by the country of the flags of the vessel and/or Owners' taxes). Extra insurances on cargo due to ship's age, if any, to be for Charterers' account.

### Clause 65 – Cargo Separation
Vessel to provide hold-wise separations only. Any artificial separations to be done at Charterers' time/expense and risk in respect of any co-mingling and to be to Master's satisfaction.

### Clause 66 – Deviation Bunkering Clause
Owners have the option to take bunkers at Las Palmas. Vessel, during such bunkering period including the deviation, will be off-hire and any expenses to be for Owners' account.

### Clause 67 – BIMCO ISM Clause
From the date of coming into force of the International Safety Management (ISM) Code in relation to the vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the vessel and "The Company" (as defined by the ISM Code) shall comply with the requirements of the ISM Code. Upon request the Owners shall provide a copy of the relevant Document of Compliance (DOC) and Safety Management Certificate (SMC) to the Charterers. Except as otherwise provided in this Charter Party, loss, damage, expense or delay caused by failure on the part of the Owners of "The Company" to comply with the ISM Code shall be for Owners' account.

### Clause 68
Charterers have the right to employ an independent weather routing to monitor the vessel's speed-bunker consumption performance. In case of discrepancy between the ship's logs and the weather routing companies findings, the latter to be taken as ruling.



## NEW JASON CLAUSE

In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequence of which the Carrier is not responsible by statute, contract or otherwise, the goods, Shippers or Consignees or Owners of the goods shall contribute with the Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage or special charges incurred in respect of the goods. If a salving ship is owned or operated by the carrier, salvage shall be paid as fully as if such salving ship or ships belonged to strangers. Such deposit, as the Carriers or its Agents may deem sufficient, to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, Shippers or Consignees or Owners of the goods to the Carriers before delivery.

## NEW BOTH TO BLAME COLLISION CLAUSE

If the liability for any collision on which the vessel is involved while performing this Bill of Lading fails to be determined in accordance with the laws of the United States of America, the following clause shall apply.

"If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the Master, mariner, pilot or servants of the Carrier in the navigation or in the management of the vessel, the owners of the goods carried hereunder will indemnify the carrier against all loss or liability to the other or non-carrying ship or her Owners in so far as such loss or liability represents loss of or damage to, or any claim whatsoever of the owners of the said goods, paid or payable by the other or non-carrying ship or her Owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying ship or her Owners as part of their claims against the carrying ship or carrier."

The foregoing provisions shall also apply where the Owners, operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect of a collision or contact.

## GENERAL CLAUSE PARAMOUNT

It is hereby mutually agreed that all Bills of Lading pursuant to this Charter Party shall bear the following Clause:

"All terms, provisions and conditions of the Rules contained in the International Convention for the Unification of Certain Rules Relating to Bills of Lading dated Brussels 25th August 1924 as amended by the Protocol done in Brussels 23rd February 1968 (commonly known as "Hague-Visby Rules") and by the Protocol done in Brussels 21st December 1979, shall apply to the contract evidenced by this Bill of Lading, but if in the country of shipment or delivery of the cargo any special law has been enacted in order to incorporate the rules of the said Convention and/or of the said Protocols, then all the terms, provisions and conditions of the said Convention and of the said Protocols, with and subject to such modifications and additions, if any, as are imposed by such special law, shall apply. Nothing herein contained shall be deemed to be a surrender by the carrier of any of its rights or immunities or an increase of any of his responsibilities under the said rules or enactments.

The carrier is to be entitled to the benefit of such privileges, rights, and immunities as are contained in the said rules or enactments as if the same were herein specifically set out, and if anything herein contained be inconsistent with the said rules or enactments it shall, to the extent of such inconsistency and no further, be null and void."

JAMES HOOD LLC    Fax:2038319757    Jan 21 2008 11:09am P012/027



## BIMCO Standard War Risks Clause for

## Time Charters, 1993 Code Name: "Conwartime 1993"

**(1)** For the purpose of this Clause, the words:

**(a)** 'Owners' shall include the Shipowners, barefoot Charterers, Disponent Owners, Managers or other operators who are charged with the management of the vessel, and the Master; and

**(b)** 'War Risks' shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.

**(2)** The vessel, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through, any port, place, area or zone (whether of land or sea), or any waterway or canal, where it appears that the vessel, her cargo, crew or other persons on board the Vessel, in the reasonable judgement of the Master and/or the Owners, may be, or are likely to be, exposed to War Risks. Should the Vessel be within any such place as aforesaid, which only becomes dangerous, or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.

**(3)** The Vessel shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels, or is imposed selectively in any way whatsoever against vessels of certain flags or ownership, or again certain cargoes or crews or otherwise however, or to proceed to an area where she shall be subject, or is likely to be subject to a belligerents right of search and/or confiscation.

**(4)**
**(a)** The Owners may effect war risk insurance in respect of the Hull and Machinery of the Vessel and their other interest (including, but not limited to, loss of earnings and detention, the crew and their Protection and Indemnity Risks), and the premiums and/or calls therefore shall be for their account.

**(b)** If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterer's orders, the Vessel is within, or is due to enter and remain within, any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then such premiums and/or calls shall be reimbursed by the Charterers to the Owners at the same time as the next payment of hire is due.

**(5)** If the Owners become liable under the terms of employment to pay to the crew any bonus or additional wages in respect of sailing into an area which is dangerous in the manner defined by the said terms, then such bonus or additional wages shall be reimbursed to the Owners by the Charterers at the same time as the next payment of hire is due.

JAMES HOOD LLC    Fax:2038319757    Jan 21 2008 11:09am P013/027



**(6)** The Vessel shall have liberty:

(a) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery or in any other way whatsoever, which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government, body or group whatsoever acting with the power to compel compliance with their orders or directions;

(b) to comply with the orders, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

(c) to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

(d) to divert and discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;

(e) to divert and call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions.

**(7)** If in accordance with their rights under the foregoing provisions of this Clause, the Owners shall refuse to proceed to the loading and discharging ports, or any one or more of them, they shall immediately inform the Charterers. No cargo shall be discharged at any alternative port without first giving the Charterers notice of the Owners' intention to do so and requesting them to nominate a safe port for such discharge. Failing such nomination by the Charterers within 48 hours of the receipt of such notice and request, the Owners may discharge the cargo at any safe port of their own choice.

**(8)** If in compliance with any of the provisions of sub-clauses (2) to (7) of this Clause anything is done or not done, such shall not be deemed a deviation, but shall be considered as due fulfilment of this Charter Party.

# EXHIBIT 4





N E W   Y O R K
**TIME CHARTER**
New York Produce Exchange Form

**FIRST ORIGINAL**

Copyright © 1981 and Published by; The Association
of Ship Brokers & Agents (U.S.A.), Inc. (ASBA), New York.
This derivative work may not be copied without
the permission of the copyright owners.
Code Name: ASBATIME

November 6th, 1913 - Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946; June 12th, 1981

|  |  |
|---|---|
|  | THIS CHARTER PARTY, made and concluded in *STAMFORD, CONNECTICUT* ........ 1 |
|  | *12*......................... day of *JULY*................................. 19 *2002* 2 |
| **Owners** | between *LISA NAVIGATION COMPANY, LLC*.......................... 3 |
|  | .................................................................... Owners of 4 |
| **Description** | the good *Marshall Islands Flag* ....Steamship/Motorship *"LISA J"* ............... 5 |
| **of** | of................................................. of *23,279* .............. tons gross register, and 6 |
| **Vessel** | *13,356*........................... tons net register, having engines of ....................... 7 |
|  | horsepower and with hull, machinery and equipment in a throughly efficient 8 |
|  | state, and classed *NK*.................................................... of about 9 |
|  | *50,748/50,039* ................... cubic *meters* feet grain/bale capacity ............... 10 |
|  | ....................................................................., and about 11 |
|  | *40,461* ...................................... long/metric tons deadweight capacity (cargo and 12 |
|  | bunkers, including fresh water and stores not exceeding ....................... 13 |
|  | long/metric tons) on a salt water draft of *11.020*............................ on summer 14 |
|  | freeboard, inclusive of permanent bunkers; which are of the capacity of about 15 |
|  | ................................................................. long/metric tons of 16 |
|  | ................................................................. fuel oil and ............... 17 |
|  | long/metric tons of ...................................................., and 18 |
|  | capable of steaming, fully laden, under good weather conditions about 19 |
|  | *13*............ knots on a consumption of about   *23*.................................. 20 |
|  | long/metric tons of *IFO 180 cst + about 1.5 mt MDO laden*.......................... 21 |
|  | *As per description Clause 28*............................................. 22 |
|  | now *trading*.............................................................. 23 |
|  | ................................................................... and 24 |
| **Charterers** | *OCEANTRADE CORPORATION*.............................................. 25 |
|  | .......................................... Charterers of the City of *Marshall Islands* 26 |
|  | The Owners agree to let and the Charterers agree to hire the vessel from the 27 |
| **Duration** | time of delivery for about *5 (five)* to *7 (seven)* months *(about means 10 days)*.............. 28 |
|  | .............................................................................. 29 |
|  | ................................................ within below mentioned trading limits. 30 |
|  | *Acceptance of delivery by Charterers shall not constitute waiver of Owners' obligations.* |
| **Sublet** | Charterers shall have liberty to sublet the vessel for all or any part of the 31 |
|  | time covered by this Charter, but Charterers shall remain responsible for the 32 |
|  | fulfillment of this Charter. 33 |
| **Delivery** | Vessel shall be placed at the disposal of the Charterers *dropping last outward sea* 34 |
|  | *pilot Huelva any time day or night Sundays and holidays included* ..................... 35 |
|  | .............................................................................. 36 |
|  | .............................................................................. 37 |
|  | ~~in such dock or at such berth or place (where she may safely lie, always afloat,~~ 38 |
|  | ~~at all times of tide, except as otherwise provided in Clause 6) as the Charterers~~ 39 |
|  | ~~may direct. If such dock, berth or place be not available, time shall count as~~ 40 |
|  | ~~provided in Clause 5.~~ Vessel on her delivery shall be ready to receive cargo with 41 |
|  | clean-swept holds *freshwater washed down and dried up and which to be free from loose* 42 |
|  | *rust/rust scale in holds and hatches and residue of previous cargo* and tight, staunch, |
|  | strong and in every way fitted for ordi- |
|  | nary cargo service, having water ballast and with sufficient power to operate all 43 |
|  | cargo-handling gear simultaneously (and with full complement of officers and 44 |
|  | crew for a vessel of her tonnage), to be employed in carrying lawful merchan- 45 |
| **Dangerous** | dise excluding ~~any goods of a dangerous, injurious, flammable or corrosive~~ 46 |
| **~~Cargo~~** | ~~nature unless carried in accordance with the requirements or recom-~~ 47 |
|  | ~~mendations of the proper authorities of the vessel's registry and of~~ 48 |
|  | ~~the states of ports of shipment and discharge and of any intermediate states or~~ 49 |
|  | ~~ports through whose waters the vessel must pass. Without prejudice to the~~ 50 |
| **~~Cargo~~** | ~~generality of the foregoing, in addition the following are specifically excluded:~~ 51 |
| **~~Exclusions~~** | ~~livestock of any description, arms, ammunition, explosives~~.................. 52 |
|  | *See Clause 36*.......................................................... 53 |

# FIRST ORIGINAL

|  |  | 54 |
|--|--|----|
|  | ...................................................................................................................... | 55 |
|  | ...................................................................................................................... | 56 |
| **Trading** | The vessel shall be employed in such lawful trades between safe ports and | 57 |
| **Limits** | places within *See Clause 37*.......................................................................... | 58 |
|  | ................................................................... excluding ................................... | 59 |
|  | ...................................................................................................................... | 60 |
|  | ...................................................................................................................... | 61 |
|  | ...................................................................................................................... | 62 |

as the Charterers or their agents shall direct, on the following conditions:        63

<table>
<tr><td><b>Owners</b></td><td>1.   The Owners shall provide and pay for the insurance of the vessel and</td><td>64</td></tr>
<tr><td><b>to</b></td><td>for all provisions, <i>drinking water</i>, cabin, deck, engine-room and other necessary</td><td>65</td></tr>
<tr><td><b>Provide</b></td><td>stores, in-</td><td></td></tr>
</table>

cluding boiler water; shall pay for wages, consular shipping and discharging        66
fees of the crew and charges for port services pertaining to the crew; shall        67
maintain vessel's class and keep her in a thoroughly efficient state in hull,        68
machinery and equipment *during the currency of this Charter with all certificates for the*        69
*vessel and officers/crew to comply with current regulations at ports of call and canals* for
and during the service *except when vessel is trading to excluded areas; war zones or*
*breaching I.W.L. with Owners' approval under Clauses 29 and 30, Charterers to allow*
*Owners reasonable time for arrangements to comply with provisions of this Clause.*

<table>
<tr><td><b>Charterers</b></td><td>2.   The Charterers, while the vessel is on hire, shall provide and pay for all</td><td>70</td></tr>
<tr><td><b>to</b></td><td>the fuel except <i>lubricating oil</i> and as otherwise agreed, port charges, <i>compulsory</i></td><td>71</td></tr>
<tr><td></td><td>pilotages, <i>including Magellan, Bosphorus and Skaw/Great Belt</i> towages, agen-</td><td></td></tr>
<tr><td><b>Provide</b></td><td>cies, <i>compulsory garbage removal</i>, commissions, consular charges (except those</td><td>72</td></tr>
<tr><td></td><td>pertaining to individual</td><td></td></tr>
</table>

crew members or flag of the vessel), and all other usual expenses except those        73
stated in Clause 1, but when the vessel puts into a port for causes for which        74
vessel is responsible, then all such charges incurred shall be paid by the        75
Owners. Fumigations ordered because of illness of the crew shall be for        76
Owners' account. Fumigations ordered because of cargoes carried or ports        77
visited while vessel is employed under this Charter shall be for Charterers'        78
account. All other fumigations shall be for Charterers' account ~~after vessel has~~        79
~~been on charter for a continuous period of six months or more.~~ *It is understood that*        80
*electric cooking ranges are equipped on board.*

Charterers shall provide necessary dunnage and shifting boards, also        81
any extra fittings requisite for a special trade or unusual cargo, but Owners        82
shall allow them the use of any dunnage, *lashing material* and shifting boards already        83
aboard
vessel. *See Clause 72.*        84

<table>
<tr><td><b>Bunkers</b></td><td>3.   ~~The Charterers on delivery, and the Owners on redelivery, shall take~~</td><td>85</td></tr>
<tr><td><b>on</b></td><td>~~over and pay for all fuel and diesel oil remaining on board the vessel as~~</td><td>86</td></tr>
<tr><td><b>Delivery</b></td><td>~~hereunder. The vessel shall be delivered with:~~.............................................</td><td>87</td></tr>
<tr><td><b>and</b></td><td>~~long/metric*~~ tons of fuel oil at the price of...............................................~~per ton;~~</td><td>88</td></tr>
<tr><td><b>Redelivery</b></td><td>.....................................................~~tons of diesel oil at the price of~~.....................</td><td>89</td></tr>
<tr><td></td><td>~~per ton. The vessel shall be redelivered with:~~................................................</td><td>90</td></tr>
<tr><td></td><td>~~tons of fuel oil at the price of~~.............................................~~per ton;~~.....................</td><td>91</td></tr>
<tr><td></td><td>.......................................~~tons of diesel oil at the price of~~..........................~~per ton~~</td><td>92</td></tr>
<tr><td></td><td></td><td>93</td></tr>
</table>

*See Clause 68*.....................................................................................................        94
~~(*Same tons apply throughout this clause)~~        95

<table>
<tr><td><b>Rate of</b></td><td>4.   The Charterers shall pay for the use and hire of the said vessel at the</td><td>96</td></tr>
<tr><td><b>Hire</b></td><td>rate of <i>U.S. $8,000 (eight thousand dollars)</i>........... daily, <i>including overtime. If Charterers</i></td><td>97</td></tr>
<tr><td></td><td><i>redeliver the vessel to Singapore-Japan range they will pay a redelivery bonus of U.S.</i></td><td></td></tr>
<tr><td></td><td><i>$150,000 (one hundred and fifty thousand dollars)</i> ~~or~~</td><td></td></tr>
</table>

................................................................................~~United States Currency~~        98
~~per ton on vessel's total deadweight carrying capacity, including bunkers and~~        99
~~stores, on~~................................................~~summer freeboard, per calendar month,~~        100
commencing on and from the day of her delivery, as aforesaid, and at and after        101
the same rate for any part of a month; hire shall continue until the hour of the        102
day of her redelivery in like good order and condition, ordinary wear and tear        103

<table>
<tr><td><b>Redelivery</b></td><td>excepted, to the Owners (unless vessel lost) at <i>dropping last outward sea pilot safe</i></td><td>104</td></tr>
<tr><td><b>Areas and</b></td><td><i>Atlantic port in Charterers' option out of Boston/Buenos Aires range including Carribean</i></td><td>105</td></tr>
<tr><td><b>Notices</b></td><td><i>islands or Skaw/Gibraltar range including Mediterranean/Black Sea, UK/Ire or</i></td><td>106</td></tr>
<tr><td></td><td><i>Singapore/Japan range. Also See Line 97.</i>_____ unless otherwise mutually</td><td>107</td></tr>
</table>

# FIRST ORIG...

agreed.

Charterers shall give Owners not less than *20/15/10/5/3/1* ......................... days notice 108
of vessel's expected date of redelivery and probable port *definite delivery port to be* 109
*advised together with 10 days notice.* ................................................................................... 110

**Hire**      5. Payment of hire shall be made so as to be received by Owners or their 111
**Payment** designated payee in New York, i.e. *Fleet Bank, 645 Jericho Turnpike, New Hyde Park,* 112
**and** *NY 11040 – ABA 021200339 - for credit to: Apex Marine Ship Management - Bulk Agency* 113
**Commencement** *Account - account no.:9417583820 - Ref.: Lisa J/ OTC Charter Hire* ............................. 114
...................................................................... in United States Currency, in funds 115
available to the Owners on the due date, ~~semi-monthly~~ *15 days* in advance, and for 116
the

last *15 days* ~~half month~~ or part of same the approximate amount of hire, and should 117
same not cover the actual time, hire shall be paid for the balance day by day as 118
it becomes due, if so required by Owners. Failing the punctual and regular 119
payment of the hire, or on any breach of this Charter *subject to Clause 35*, the Owners 120
shall be at

liberty to withdraw the vessel from the service of the Charterers without pre- 121
judice to any claims they (the Owners) may otherwise have on the Charterers. 122
~~Time shall count from 7 A.M. on the working day following that on~~ 123
~~which written notice of readiness has been given to Charterers or their agents~~ 124
~~before 4 P.M., but if required by Charterers, they shall have the privilege of~~ 125
~~using vessel at once, in which case the vessel will be on hire from the com-~~ 126
~~mencement of work.~~ 127

**Cash**      Cash for vessel's ordinary disbursements at any port may be advanced, 128
**Advances** as required by the Captain, by the Charterers or their agents, subject to 2 1/2 129
percent commission and such advances shall be deducted from the hire. The 130
Charterers, however, shall in no way be responsible for the application of such 131
advances. 132

**Berths**      6. Vessel shall be loaded and discharged in any *safe* dock or at any *safe* berth 133
or

*safe* place that Charterers or their agents may direct, provided the vessel can safely 134
lie always afloat at any time of tide, except at such places where it is customary 135
for similar size vessels to safely lie aground. 136

**Spaces**      7. The whole reach of the vessel's holds, decks, and usual places *including* 137
*deck and hatch covers* of

**Available** loading (not more than she can reasonably and safely stow and carry) *compatible to* 138
*the vessels' seaworthiness*, also

accommodations for supercargo, if carried, shall be at the Charterers' dis- 139
posal, reserving only proper and sufficient space for ship's officers, crew, 140
tackle, apparel, furniture, provisions, stores and fuel. 141

**Prosecution**      8. The Captain shall prosecute his voyages with due despatch, and shall 142
**of** render all customary assistance with ship's crew and boats. The Captain 143
**Voyages** (although appointed by the Owners) shall be under the orders and directions of 144
the Charterers as regards employment and agency; and Charterers are to 145
perform all cargo handling at their expense under the supervision *and responsiblity* of 146
the

Captain, who is to sign the bills of lading for cargo as presented in conformity 147
with mate's ~~or tally clerk's~~ receipts. However, at Charterers' option, the Chart- 148
erers or their agents may sign bills of lading on behalf of the Captain always in 149
**Bills** conformity with mate's ~~or tally clerk's~~ receipts. All bills of lading shall be 150
**of** without prejudice to this Charter and the Charterers shall indemnify the Own- 151
**Lading** ers against all consequences or liabilities which may arise from any inconsis- 152
tency between this Charter and any bills of lading or waybills signed by the 153
Charterers or their agents or by the Captain at their request. 154

**Conduct of**      9. *The Captain and the radio officers at least shall be conversant in English.* If the 155
**Captain** Charterers shall have reason to be dissatisfied with the conduct of
the Captain or officers, the Owners shall, on receiving particulars of the 156
complaint, investigate the same, and, if necessary, make a change in the 157
appointments. 158

**Supercargo**      10. The Charterers are entitled to appoint a supercargo, who shall accom- 159
**and** pany the vessel and see that voyages are prosecuted with due despatch. He is 160
**Meals** to be furnished with free accommodation and same fare as provided for 161
Captain's table, Charterers paying at the rate of *U.S. $10* ............................. per day. 162
Owners shall victual pilots and customs officers, and also, when authorized by 163
Charterers or their agents, shall victual tally clerks, stevedore's foreman, etc., 164

|  | Charterers paying at the rate of *as per Clause 73* per meal for all such victual- | 165 |
|  | ling. | 166 |
| Sailing | 11. The Charterers shall furnish the Captain from time to time with all | 167 |
| Orders | requisite instructions and sailing directions, in writing, and the Captain shall | 168 |
| and Logs | keep full and correct deck and engine logs of the voyage or voyages, which are | 169 |
|  | to be patent to the Charterers or their agents, and furnish the Charterers, their | 170 |
|  | agents or supercargo, when required, with a true copy of such deck and engine | 171 |
|  | logs, showing the course of the vessel, distance run and the consumption of | 172 |
|  | fuel. | 173 |
| Ventilation | 12. The Captain shall use diligence in caring for the ventilation of the | 174 |
|  | cargo *always subject to Charterers' written instructions (like term 'written' includes given* | 175 |
|  | *by telex/fax/cable). Vessel has natural ventilation only.* |  |
| Continuation | 13. ~~The Charterers shall have the option of continuing this Charter for a~~ | 176 |
|  | ~~further period of~~ ........................................................................................... | 177 |
|  | .......................................................................................................................... | 178 |
| Laydays/ | 14. If required by Charterers, time shall not commence before *23rd July 2002* | 179 |
| Cancelling | ................................................... and should vessel not have given written | 180 |
|  | notice of readiness on or before *30th July 2002* ......................................... but not | 181 |
|  | later than *24:00 hours* ~~4 P.M.~~ Charterers or their agents shall have the option of | 182 |
|  | cancelling |  |
|  | this Charter at any time not later than the day of vessel's readiness. | 183 |
| Off | 15. In the event of the loss of time from deficiency and/or default *and/or strike or* | 184 |
|  | *by sabotage* of officers |  |
| Hire | or crew or deficiency of stores, fire, breakdown of, or damages to, hull, | 185 |
|  | machinery or equipment, grounding, detention by average accidents to ship or | 186 |
|  | cargo unless resulting from inherent vice, quality or defect of the cargo, | 187 |
|  | drydocking for the purpose of examination or painting bottom, or by any other | 188 |
|  | similar cause preventing the full working of the vessel, the payment of hire and | 189 |
|  | overtime, if any, shall cease for the time thereby lost. ~~Should the vessel deviate~~ | 190 |
|  | ~~or put back during a voyage, contrary to the orders or directions of the~~ | 191 |
|  | ~~Charterers, for any reason other than accident to the cargo, the hire is to be~~ | 192 |
|  | ~~suspended from the time of her deviating or putting back until she is again in~~ | 193 |
|  | ~~the same or equidistant position from the destination and the voyage resumed~~ | 194 |
|  | ~~therefrom.~~ All fuel used by the vessel while off hire shall be for Owners' | 195 |
|  | account. *Bunker consumed during off-hire for whatever reason shall be calculated at* | 196 |
|  | *actual purchase prices at last bunkering port.* In the event of the vessel being driven |  |
|  | into port or to anchorage |  |
|  | through stress of weather, trading to shallow harbors or to rivers or ports with | 197 |
|  | bars, any detention of the vessel and/or expenses resulting from such deten- | 198 |
|  | tion shall be for the Charterers' account. If upon the voyage the speed be | 199 |
|  | reduced by defect in, or breakdown of, any part of her hull, machinery or | 200 |
|  | equipment, the time so lost, and the cost of any extra fuel consumed in | 201 |
|  | consequence thereof, and all extra expenses shall be deducted from the hire. | 202 |
|  | *However, if the vessel remains stationary or at a port in tropical waters for 30 days or* |  |
|  | *longer, the Charterers to clean any bottom fouling, failing which Owners are not to be* |  |
|  | *responsible for vessels' speed/consumption performance.* |  |
| Total | 16. Should the vessel be lost, money paid in advance and not earned *and also* | 203 |
|  | *cost of estimated bunkers on board at the time of loss* |  |
| Loss | (reckoning from the date of loss or being last heard of) shall be returned to the | 204 |
|  | Charterers at once. | 205 |
| Exceptions | The act of God, enemies, fire, restraint of princes, rulers and people, | 206 |
|  | and all dangers and accidents of the seas, rivers, machinery, boilers and steam | 207 |
|  | navigation, and errors of navigation throughout this Charter, always mutually | 208 |
|  | excepted. | 209 |
| Liberties | The vessel shall have the liberty to sail with or without pilots, to tow and | 210 |
|  | to be towed, to assist vessels in distress, and to deviate for the purpose of | 211 |
|  | saving life and property. | 212 |
| Arbitration | 17. Should any dispute arise between Owners and the Charterers, the | 213 |
|  | matter in dispute shall be referred to three persons at New York, one to be | 214 |
|  | appointed by each of the parties hereto, and the third by the two so chosen; | 215 |
|  | their decision, or that of any two of them, shall be final and for the purpose of | 216 |
|  | enforcing any award this agreement may be made a rule of the Court. The | 217 |
|  | arbitrators shall be commercial men conversant with shipping matters. *For claims up* | 218 |
|  | *to U.S. $50,000 – the Small Claims Procedure to apply.* |  |
| Liens | 18. The Owners shall have a lien upon all cargoes and all sub-freights for | 219 |

|  | any amounts due under this Charter, including general average contributions, | 220 |
|  | and the Charterers shall have a lien on the ship for all monies paid in advance | 221 |
|  | and not earned, and any overpaid hire or excess deposit to be returned at once. | 222 |
|  | Charterers will not suffer, nor permit to be continued, any lien or encumbrance | 223 |
|  | incurred by them or their agents, which might have priority over the title and | 224 |
|  | interest of the Owners in the vessel. | 225 |
| **Salvage** | 19. All derelicts and salvage shall be for Owners' and Charterers' equal | 226 |
|  | benefit after deducting Owners' and Charterers' expenses and crew's propor- | 227 |
|  | tion. | 228 |
| **General** | General average shall be adjusted, according to York-Antwerp Rules | 229 |
| **Average** | 1974, *or any amendments thereto in hire not to contribute to General Average* ~~at such~~ | 230 |
|  | ~~port or place in the United States as may be selected by the~~ | |
|  | ~~Owners and as to matters not provided for by these Rules, according to the~~ | 231 |
|  | ~~laws and usage at the port of New York. In such adjustment disbursements in~~ | 232 |
|  | ~~foreign currencies shall be exchanged into United States money at the rate~~ | 233 |
|  | ~~prevailing on the dates made and allowances for damage to cargo claimed in~~ | 234 |
|  | ~~foreign currency shall be converted at the rate prevailing on the last day of~~ | 235 |
|  | ~~discharge at the port or place of final discharge of such damaged cargo from~~ | 236 |
|  | ~~the ship. Average agreement or bond and such additional security, as may be~~ | 237 |
|  | ~~required by the Owners, must be furnished before delivery of the goods. Such~~ | 238 |
|  | ~~cash deposit as the Owners or their agents may deem sufficient as additional~~ | 239 |
|  | ~~security for the contribution of the goods and for any salvage and special~~ | 240 |
|  | ~~charges thereon, shall, if required, be made by the goods, shippers, consign-~~ | 241 |
|  | ~~ees or owners of the goods to the Owners before delivery. Such deposit shall,~~ | 242 |
|  | ~~at the option of the Owners, be payable in United States money and remitted to~~ | 243 |
|  | ~~the adjuster. When so remitted the deposit shall be held in a special account at~~ | 244 |
|  | ~~the place of adjustment in the name of the adjuster pending settlement of the~~ | 245 |
|  | ~~general average and refunds or credit balances, if any, shall be paid in United~~ | 246 |
|  | ~~States money.~~ | 247 |
| **York-** | Charterers shall *endeavour to* procure that all bills of lading issued during the cur- | 248 |
| **Antwerp** | rency of the Charter will contain a provision to the effect that general average | 249 |
| **Rules** | shall be adjusted according to York-Antwerp Rules 1974 and will include the | 250 |
|  | "New Jason Clause" as per Clause 23. | 251 |
| ~~**Drydocking**~~ | ~~20. The vessel was last drydocked.............................................................The~~ | 252 |
|  | ~~Owners shall have the option to place the vessel in drydock during the cur-~~ | 253 |
|  | ~~rency of this Charter at a convenient time and place, to be mutually agreed~~ | 254 |
|  | ~~upon between Owners and Charterers, for bottom cleaning and painting~~ | 255 |
|  | ~~and/or repair as required by class or dictated by circumstances. Payment of~~ | 256 |
|  | ~~hire shall be suspended upon deviation from Charterers' service until vessel is~~ | 257 |
|  | ~~again placed at Charterers' disposal at a point not less favorable to Charterers~~ | 258 |
|  | ~~than when the hire was suspended................................................................~~ | 259 |
|  | *No dry-docking except in case of emergency.* ............................................... | 260 |
|  | ............................................................................................................... | 261 |
| **Cargo** | 21. Owners shall maintain the cargo-handling gear of the ship which is as | 262 |
| **Gear** | follows:.............................................................................................. | 263 |
|  | ............................................................................................................... | 264 |
|  | ............................................................................................................... | 265 |
|  | providing gear (for all derricks or cranes) capable of lifting capacity as de- | 266 |
|  | scribed. Owners shall also provide on the vessel for night work lights as on | 267 |
|  | board, but all additional lights over those on board shall be at Charterers' | 268 |
|  | expense. The Charterers shall have the use of any gear *including ropes, falls, slings* | 269 |
|  | *and blocks* on board the vessel. If | |
|  | required by Charterers, the vessel shall work night and day and all cargo- | 270 |
|  | handling gear shall be at Charterers' disposal during loading and discharging. | 271 |
| **Stevedore** | In the event of disabled cargo-handling gear, or insufficient power to operate | 272 |
| **Stand-by** | the same, the vessel is to be considered to be off hire *pro-rata* to the extent that time is | 273 |
|  | actually lost to the Charterers and Owners to pay *any extra expenses/directly related* | 274 |
|  | *costs including* stevedore stand-by charges | |
|  | occasioned thereby. If required by the Charterers, *and agreed by the Owner and/or* | 275 |
|  | *Master* the Owners are to bear the | |
|  | cost of hiring shore gear in lieu thereof, *but vessel to remain on hire.* | 276 |
| **Crew** | 22. In lieu of any overtime payments to officers and crew for work ordered | 277 |
| **Overtime** | by Charterers or their agents, Charterers shall pay Owners $ ..................... | 278 |

# FIRST ORIGINAL

per month or pro rata. 279

**Clauses Paramount**

23. The following clause is to be included in all bills of lading issued hereunder: 280 281

This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, the Hague Rules, or the Hague-Visby Rules, as applicable, or such other similar national legislation as may mandatorily apply by virtue of origin or destination of the bills of lading, which shall be deemed to be incorporated herein and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said applicable Act. If any term of this bill of lading be repugnant to said applicable Act to any extent, such term shall be void to that extent, but no further. 282–290

This Charter is subject to the following clauses all of which are to be included in all bills of lading issued hereunder: 291 292

**New Both-to-Blame Collision Clause**

If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the master, mariner, pilot or the servants of the carrier in the navigation or in the management of the ship, the owners of the goods carried hereunder will indemnify the carrier against all loss or liability to the other or non-carrying ship or her owners insofar as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying ship or carrier. 293–302

The foregoing provisions shall also apply where the owners, operators or those in charge of any ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contact. 303–305

**New Jason Clause**

In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequences of which, the carrier is not responsible, by statute, contract, or otherwise, the goods, shippers, consignees, or owners of the goods shall contribute with the carrier in general average to the payment of any sacrifices, losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the goods. 306–313

If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if salving ship or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. 314–319

**War Clauses**

(a) No contraband of war shall be shipped. Vessel shall not be required, without the consent of Owners, which shall not be unreasonably withheld, to enter any port or zone which is involved in a state of war, warlike operations, or hostilities, civil strife, insurrection or piracy whether there be a declaration of war or not, where vessel, cargo or crew might reasonably be expected to be subject to capture, seizure or arrest, or to a hostile act by a belligerent power (the term "power" meaning any de jure or de facto authority or any purported governmental organization maintaining naval, military or air forces). 320–328

(b) If such consent is given by Owners, Charterers will pay the provable additional cost of insuring vessel against hull war risks in an amount equal to the value under her ordinary hull policy but not exceeding a valuation of ...................................................,. In addition, Owners may purchase and Charterers will pay for war risk insurance on ancillary risks such as loss of hire, freight disbursements, total loss, blocking and trapping, etc. If such insurance is not obtainable commercially or through a government program, vessel shall not be required to enter or remain at any such port or zone. 329–336

(c) In the event of the existence of the conditions described in (a) subsequent to the date of this Charter, or while vessel is on hire under this Charter, Charterers shall, in respect of voyages to any such port or zone assume the provable additional cost of wages and insurance properly incurred in connection with master, officers and crew as a consequence of such war, warlike operations or hostilities. *See Clause 67.* 337–342

**Ice**

24. The vessel shall not be required to enter or remain in any icebound port 343

| | | |
|---|---|---|
| | or area, nor any port or area where lights or lightships have been or are about | 344 |
| | to be withdrawn by reason of ice, nor where there is risk that in the ordinary | 345 |
| | course of things the vessel will not be able on account of ice to safely enter and | 346 |
| | remain in the port or area or to get out after having completed loading or | 347 |
| | discharging. *Vessel is not to force ice or follow ice breakers.* | 348 |
| Navigation | 25. Nothing herein stated is to be construed as a demise of the vessel to the | 349 |
| | Time Charterers. The Owners shall remain responsible for the navigation of the | 350 |
| | vessel, acts of pilots and tug boats, insurance, crew, and all other similar | 351 |
| | matters, same as when trading for their own account. | 352 |
| Commissions | 26. A commission of *1.25*.................................. percent is payable by the vessel | 353 |
| | and Owners to *Simpson, Spence and Young, New York* ................................................ | 354 |
| | ........................................................................................................................................ | 355 |
| | on hire earned and paid under this Charter, and also upon any continuation or | 356 |
| | extension of this Charter. | 357 |
| Address | 27. An address commission of *3.75* ........................................................ percent | 358 |
| | is payable to *Charterers* ............................................................................................ | 359 |
| | ........................................................................................................................................ | 360 |
| | on hire earned and paid under this Charter. | 361 |
| Rider | Rider Clauses *28-77*............................................................................... as at- | 362 |
| | tached hereto are incorporated in this Charter. | 363 |

PER AUTHORITY OF
OCEANTRADE CORPORATION
BY BULKAMERICA CORPORATION

AS AGENTS ONLY

# EXHIBIT 5

ᵣERICA CORPORATION
ᵣwayton Avenue
ᵣ420
ᵣwayton, Connecticut
ᵣSA 06853

*As Agents for*
*OCEANTRADE CORPORATION*

| | |
|---|---|
| TO: | EVAN GALANIS |
| COMPANY: | SSY - NY |
| FAX #: | (203) 356-2010 |
| DATE: | AUGUST 16, 2002 |
| FROM: | LORI ANN PANTALEO |
| NUMBER OF PAGES: | 2 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### FINAL HIRE STATEMENT

OCEANTRADE/ASIA BULK
M/V LISA J
C/P DTD 07/16/2002

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| HIRE #3: | FROM: | 24-Jul-02 | 17:18 HRS | GMT | | | |
|---|---|---|---|---|---|---|---|
| | TO: | 14-Aug-02 | 13:12 HRS | GMT | | | |
| 20.829167 DAYS @    $6,450 | | | | | : | USD | 134,348.12 |
| ADDRESS COMMISSION | @    3.75% | | | | : | USD | (5,038.05) |
| BROKERAGE COMMISSION | @    1.25% | | | | : | USD | (1,679.35) |
| | | | | | : | USD | 127,630.72 |

| BUNKER CONSUMPTION | | | | | |
|---|---|---|---|---|---|
| IFO | 330.504 MT | @ $150.00 /MT | : | USD | 49,575.60 |
| MDO | 35.792 | @ $250.00 | : | USD | 8,948.00 |
| | | | : | USD | 58,523.60 |

| LUMPSUM TELEX/REPRESENTATION: | | | | |
|---|---|---|---|---|
| 20.82917 DAYS @    $1,000 / MONTH | : | USD | 694.31 |
| | : | USD | 694.31 |

| ILOHC | | | |
|---|---|---|---|
| | : | USD | 3,500.00 |
| | : | USD | 3,500.00 |

| HOLD CONDITION: | | | |
|---|---|---|---|
| | : | USD | |
| | | | 0.00 |

## S ITEMS:

|  |  |  | : | USD | |
|--|--|--|---|-----|--|
|  |  |  | : | USD | 0.00 |

### SURVEYS:

| ON-HIRE | ESTIMATED (USD 700/3)X2 | | : | USD | (466.67) |
|---------|-------------------------|--|---|-----|----------|
| OFF-HIRE | ESTIMATED (USD 440/2) | | : | USD | (220.00) |
|  |  |  | : | USD | (686.67) |

### REMITTANCES:

| CH#1: | JULY 25, 2002 | | : | USD | (150,621.87) |
|-------|---------------|--|---|-----|--------------|
| CH#2: | AUGUST 8, 2002 | | : | USD | (29,641.35) |
|  |  |  | : | USD | (180,263.22) |

| **DUE TO OCEANTRADE CORPORATION:** | | | : | **USD** | **9,398.74** |
|---|---|---|---|---|---|

*******************************************************************************************************************

PLEASE HAVE CHARTERERS REMIT HIRE BY WIRE TRANSFER AS FOLLOWS:

UBS (THE UNION BANK OF SWITZERLAND)
ZURICH HEAD OFFICE          ZURICH, SWITZERLAND
SWIFT ADDRESS:             UBSWCHZH80A
FOR FURTHER CREDIT:        UBS AG
                          BAARESTRASSE 14A
                          ZUG, SWITZERLAND  6301
ACCOUNT #:                273-245603.60Y
FOR CREDIT TO:            SEA VENTURES CORPORATION
REFERENCE:                ASIA BULK/MV LISA J/CP 07/16/2002

REGARDS,
BULKAMERICA CORPORATION

**EXHIBIT 6**

## OCEANTRADE CORPORATION

### FINAL HIRE STATEMENT
### Revised January 3, 2007

MV LISA J CP JULY 16, 2002

TO:    ASIA BULK INC.

| | | | | | | |
|---|---|---|---|---|---|---|
| **TOTAL HIRE** | FROM: | | 24-Jul-02 | 17:18 HRS GMT | | |
| | TO: | | 16-Aug-02 | 13:12 HRS GMT | | |
| 22.829167 DAYS @ | | $8,450 | | | USD | 147,248.13 |
| ADDRESS COMMISSION | | | @ | 3.75% | USD | (5,521.80) |
| BROKERAGE COMMISSION | | | @ | 1.25% | USD | (1,840.60) |
| | | | | | USD | 139,885.73 |
| | | | | | | |
| **BUNKERS CONSUMED ON VOYAGE:** | | | | | | |
| | | | | | | |
| IFO | 330.504 MTS | | @ | $150.00 | USD | 49,575.60 |
| MDO | 35.792000 MTS | | @ | $250.00 | USD | 8,948.00 |
| | | | | | | 58,523.60 |
| | | | | | | |
| **HOLD CONDITION:** | | | | | | |
| 1LOHC | | | | | USD | 3,500.00 |
| | | | | | USD | 3,500.00 |
| | | | | | | |
| **SURVEYS:** | | | | | | |
| ON-HIRE | Estimated ($700/3) X 2 | | | | USD | (466.67) |
| OFF-HIRE | Estimated ($400/2) | | | | USD | (200.00) |
| | | | | | | (666.67) |
| | | | | | | |
| **COMMUNICATION/VICTUALLING/ENTERTAINMENT:** | | | | | | |
| 22.82917 DAYS @ | | $1,250 | | | USD | 951.22 |
| | | | | | USD | 951.22 |
| | | | | | | |
| **OWNERS ITEMS:** | | | | | | |
| | | | | | | |
| | | | | | | |
| **REMITTANCES:** | | | | | | |
| CH #1: | 25-Jul-02 | | | | USD | (150,621.87) |
| CH #2 | 8-Aug-02 | | | | USD | (29,641.35) |
| | | | | | USD | (180,263.22) |
| | | | | | | |
| **DUE TO OWNERS:** | | | | | USD | 21,930.88 |

REMIT BY WIRE TRANSFER TO:

CITIBANK NA
330 MADISON AVENUE
NEW YORK, NY 10017
USA

| | |
|---|---|
| SWIFT CODE | CITI-US-33 |
| ROUTING NUMBER | 02100089 |
| ACCOUNT NUMBER | 58065237 |
| IN FAVOUR OF | OCEANTRADE CORPORATION DIP ACCOUNT |
| REFERENCE | MV LISA J CP DATED JULY 16, 2002 |

# EXHIBIT 7

18. JUL. 2002 18:54      IMC°° - COMM DIV      Fax:2039319757      Jan 21 2008 11:10am P015/027
JAMES HOOD LLC                                                   NO. 990    P. 2

MV LISA J/01VC
FORM QF 22, 23, 24.2 COMPLIED

TO: MASTER OF MV LISA J
FM: IMC SHIPPING CO PTE LTD, SINGAPORE
DATE: 18 JULY 02
REF: 001/AB/LJ

Dear Captain,

Welcome into the service of "Asiabulk Inc. Panama", your vessel's next time charterers. We, "IMC Shipping Co Pte Ltd", are the general agents of "Asiabulk Inc, Panama", we look forward to a mutually satisfactory charter. Please find outlined below, the details of your forthcoming voyage.

- Charterers:      Asiabulk Inc. Panama, "IMC Shipping Co Pte Ltd, Singapore" is the general agent of the time charterers
                   to handle all operations matters
- Delivery:        Afsps Casablanca Atdnshinc
- Laycan:          24th – 31 July 2002
- Employment:      1 to trip via sbs sps sas AA Awiwl with intended cargo BHF
- Redelivery:      Dlosp 1 SP USG/EC Mexico range Atdnshinc
- Duration:        About 20/25 days wog
- Bunkers:         Vessel to be delivered with about 500/600 mt Ifo and about 40/60mt Mdo, Vessel to be redelivered with bunker
                   quantities as on board without Charterers replenishment.

SPEED / CONSUMPTION:
At sea:  13.0 kts laden/13.5 kts ballast on  23 mt Ifo + 1.5 mt Mdo

  In port: Idle   1.4 mt Mdo
           Working  2 mt Mdo

Vessel to proceed to discharge port at 13.0 kts.

Following are the main terms of the cargo fixture:-

Voyage No.:        01VC
Charterers:        Rhodia Fosfatados SA De CV
Cargo:             38,000mt 10 pct moloo bulk phosphate rock, maximum quantity to be loaded basis discharge port arrival
                   draft 35ft FWAD. Stowage factor about 30 Cbft/mt.
Load port :        1 Sb Casablanca
Load rate:         20,000 mt pwwd Shinc
Discharge port :   1 Sb Coatzacoalcos
Discharge rate:    8,000 mt pwwd Shinc
Load/Disch term: F.I.O.S.T.
Laycan:            24 – 31 July  2002

B/L to be Claused "Freight payable as per Charter Party".

AGENT
- Shippers' agents:
  Office Cherifien des phosphates (O.C.P)
  Tlx: 21008/22052/21872
  Attn: Phosphate Shipping Dept.

- IMC Protective Agent at Loadport:
  STE FRESMAR
  2, Rue Des Freres Lugharini No.6
  5 Eme Etage Residence Karatchi
  Casablanca, Morocco
  Tlx: 45208 / 45618
  Fax: (212) 22 - 44 4034 / 44 5283

1

# EXHIBIT 8

**jhood**

**From:**  Mavis Yap Swee Moh [MavisYap@imcshipping.com.sg]
**Sent:**  Monday, February 27, 2006 6:05 PM
**To:**  Patrick J. Orr; 12129722245.faa@ums.sg
**Subject:** Lisa J / Asiabulk CP 16.07.02 (01TC)

Attn : Mr Patrick J. Orr

We acknowledge receipt of your letter of February 17, 2006 requesting
payment of USD9,398.74 to "Oceantrade Corporation".

Please be advised that our charterparty of 16/07/02 is with "Lisa J
Navigation Co LLC" and not "Oceantrade Corporation". There is no
reason for us to give USD9,398.74 to "Oceantrade Corporation" since
we have no contract with this company.

Please be guided accordingly.

Regards
For and on behalf of
Asiabulk Inc
Email: operations@imcshipping.com.sg
       mavisyap@imcshipping.com.sg

Confidentiality caution: This email may be privileged or confidential. If you are not the intended
recipient, any distribution or copying of this message and/or its attachments is strictly prohibited. If you
have received this message in error, please delete it and notify the sender.

Disclaimer : Any views or opinions presented in this email which are of a personal nature are solely
those of the author's. The company will not accept legal responsibility for the contents of such email.